STATE
*vs.*
ANTHONY DIPIETRANTONIO

Androscoggin. Opinion, April 16, 1956.

*Gaston Dumais,*
*William Hathaway,* for State.

*Armand A. Dufresne,* for Respondent.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MURRAY, A. R. J. CLARKE, J., did not sit.

FELLOWS, C. J. This is an indictment for rape. The case comes to the Law Court on exceptions of the respondent and on appeal from denial of motion for new trial, after trial in the Superior Court for Androscoggin County and verdict of guilty.

The indictment charged "that Anthony Dipietrantonio of Portland, County of Cumberland, State of Maine, on September 26, 1954, at Turner, County of Androscoggin,

State of Maine on one Mary Helen Sweeney, a female of the age of nineteen years, feloniously did make an assault, and her, the said Mary Helen Sweeney, then and there, by force and against her will, feloniously did ravish and carnally know . . .".

Briefly the facts appear to be that on Saturday evening September 25, 1954 at about 11 o'clock Mary Helen Sweeney of Portland, the complainant, weighing 110 pounds, nineteen years old and unmarried, met an acquaintance, one Nicholas Dipietro, on Temple Street in Portland. Dipietro was with his cousin, Anthony Dipietrantonio, the respondent. The respondent was previously not known to Miss Sweeney. After some conversation the three left Portland in the respondent's automobile for Rumford to call on Miss Sweeney's sister, whom she had not recently seen and with whom Dipietro had apparently been friendly.

They stopped outside of Portland, and Dipietro got out of the car and went into a store to buy several bottles of beer. Miss Sweeney remained in the car with the respondent, while Dipietro made the purchase. The two men drank the beer. Later they stopped again for more beer. The three sat on the front seat and Dipietrantonio drove the car. They passed through Gray and Auburn on the way to Rumford.

When they reached the town of Turner, Dipietro said that it was necessary for him "to go to the bathroom," and he got out of the front seat. It was very dark and no houses were near. Miss Sweeney testified that after Dipietro left the car Dipietrantonio "tried to kiss me and put his arms around me and I didn't want him to and I pushed him away and he grabbed me and pushed me against the back of the seat and hurt my back. He pushed me over onto the back seat and I tried to fight him and he kept hitting me * * * *. I told him to leave me alone and he kept hitting me and ripping at my clothes, and he tore my skirt and my bras-

siere, and the more I told him to leave me alone the more he would hit me * * * *. I had black and blue marks on my arms and legs * * *. I tried to fight back. I hit him and scratched him. I tried to kick him but I couldn't move my legs because he had them spread and was laying on them * * * *. I told him if he didn't leave me alone I would tell the police and he said I would not be able to tell anybody. He said he would kill me. I hit him and I know I scratched and tried to kick him away from me. He had my pants ripped off. He held my arms and forced me."

"Nicky came back to the car and he asked me what happened. He wanted to know what happened because I was crying and everything, and I tried to tell him but I couldn't, and he asked Tony what he did to me and Tony said 'nothing.' He said he didn't do anything. I wanted to go home and so Nicky drove the car and I sat in front and Nicky drove and Tony sat alongside of me and on the way back he said he wanted to get in the back seat with me and I said, 'No,' and I told Nicky not to let him take me in the back seat and to tell him to leave me alone and he told him to leave me alone."

"Q. What were you doing while you were driving back?
A. Just sitting there, crying.

Q. You cried all the way back?
A. Yes.

Q. When you arrived home what did you do?
A. I went upstairs. I went into the house, and I woke my mother up.

Q. What time was this, by the way, approximately?
A. Around three, I think; around three o'clock.

Q. Three A. M.?
A. Yes. And I told my mother what had happened.

Q. And then what did you do?

A. I took my skirt off and my sweater because it was all ripped, and I put an old pair of dungarees on and I went downstairs and called the police, and they came up and took me down to the police station.

Q. Will you tell the Court and jury anything you heard said in the police station while the respondent, Tony, was present there?

A. Captain McGuire asked him if he knew me and ever saw me before and he said, 'No.' He said he never saw me before in his life. Captain McQuire said, 'You are lying.' Then Captain McGuire asked Tony where he got the scratches on his face and he said that he didn't know. Captain McGuire said, 'You do know. She gave them to you, didn't she?' And he said, 'Yes, I guess she did.' "

The respondent, weighing about 185 pounds, a mason's helper, who had been in the military service for eight years and was twenty-six years old, admitted at the trial that he had intercourse with Miss Sweeney, but he denied that he used force, did not hold her, did not pull or tear her clothes, "did not touch her sweater," "did not touch her brassiere," did not push her over the seat, did not strike her, did not "touch her skirt," and only "helped her over" on to the back seat. The respondent testified that she did not object to the act. Later on, in cross examination, the respondent positively denied that he even "helped her over" on to the back seat, and respondent stated "she got into the back seat herself."

In this case the act of sexual intercourse was admitted by the respondent, so that the jury were required to answer only two questions, (1) was it done by force? and (2) was it against her will?

The crime of rape as described by the statutes of this State is "whoever ravishes and carnally knows any female

of fourteen or more years of age, by force and against her will * * * * shall be punished." Revised Statutes, 1954, Chap. 130, Sec. 10.

The elements of the crime of rape that must be proved by the State are, therefore (1) carnal knowledge of a female (2) by force and (3) against her will. The words "without her consent" and "against her will" are used synonymously. The crime may be committed when the woman exhibits no will in the matter, as where she is drugged or *non compos mentis.* See *State* v. *Flaherty,* 128 Me. 141 and *State* v. *Castner,* 122 Me. 106, and authorities there cited. The uncorroborated testimony of the prosecutrix is sufficient if probable and credible. *State* v. *Wheeler,* 150 Me. 332.

The respondent's bill of exceptions shows that Exception I was the exclusion by the presiding justice of questions, on cross examination of Miss Sweeney by the respondent's attorney relative to whether she had had "intercourse with a man before." The attorney stated that his reason for asking, and his only purpose, was "because it has some materiality with the question of resisting sexual intercourse or consenting to it with other men." It was not material or admissible for the purpose stated. Evidence of *general reputation* in the community for unchastity may sometimes be admissible, but not specific acts. *State* v. *Flaherty,* 128 Me. 141, 144, 146 Atl. 7. The fact that a woman is unchaste is not a defence to rape. Every woman is entitled to protection, and the statute recognizes this. The statute says "any female." Revised Statutes, 1954, Chap. 130, Sec. 10. If specific acts in a person's life were admissible, each trial for rape might have a number of true or false accusations, for a jury to decide, that were not material to prove the questions of force or consent in the case on trial. *Gore* v. *Curtis,* 81 Me. 403, 3 Greenleaf's Evidence, "Rape," 2nd Ed., 192.

Exception II was taken to the fact that the presiding justice asked of the complainant witness a series of questions relative to distances, and the comparison of distances that she was familiar with in Cumberland County, with the distance she travelled in Turner beyond the "Chickadee Restaurant." The respondent's attorney objected to the questioning by the court because "the State is represented by able counsel" and because questioning by the presiding justice "is prejudicial to the respondent." The presiding justice stated to the respondent's counsel in open court and before the jury that his only purpose was "to ascertain if this Court has jurisdiction," and whether this incident occurred in Androscoggin County and within 100 rods of the line of the next county as required by Revised Statutes, 1954, Chapter 145, Section 7.

We find nothing in the questions asked by the presiding justice that was prejudicial to the respondent's right to a fair trial. The court has a right and duty to ascertain the fact that there is jurisdiction. If the attorney for the State had thought to ask the same questions, the respondent would have had no cause of complaint, and no more has he when the questions are asked by the court.

Exception III related to testimony of the sheriff in regard to the swollen condition of Miss Sweeney's face and scratches on the left side of her face, as not being rebuttal evidence. This exception was expressly waived.

Exception IV was taken by the respondent to questions asked by the presiding justice of the respondent at the close of respondent's testimony. The claim of the respondent's counsel was that the questions might indicate that the presiding justice had an opinion unfavorable to respondent and was by his questions expressing an opinion, contrary to the provisions of Revised Statutes, 1954, Chap. 113, Sec. 104. The questions asked by the presiding justice of the respondent, related to why the respondent went out, as he had

testified, on the Saturday previous to the trial, to locate where the act took place, and why he had stated "I wanted to make sure it happened in Turner," and also what the respondent meant when in his testimony he used the term "criminal assault."

Where the question of a fair and impartial trial is in the balance, this court will and should go beyond the legal technicalities that may be required under other circumstances, so that the accused in any criminal case may get that impartial trial which the Constitution guarantees to him. *State* v. *Jones and Howland,* 137 Me. 137 at 139; *State* v. *Brown,* 142 Me. 16.

"Upon such complaint (that the conduct of the judge and certain questions asked by him, in a rape case, were prejudicial and reflected to the jury his own opinion of the guilt of the respondents), the record will always be examined with great care to determine whether the respondents were accorded a fair and impartial trial." *State* v. *Vashon et al.,* 135 Me. 309 at 310.

A review of a criminal case will be had, even in the absence of proper exceptions, "when it is apparent from a review of all the record that a party has not had that impartial trial to which under the law he is entitled." *State* v. *Smith,* 140 Me. 255 at 285.

A justice who presides over a jury trial occupies a place of great responsibility. He must not only see that a dignified order is maintained in the court room and that the procedure is according to rule and statute, but also that the rights of all parties are protected. In a civil case he must hold the "scales" evenly. In a criminal case he must protect the constitutional rights of a respondent, and at the same time remember that the public is also entitled to protection. A trial in a court of justice is not arranged for the purpose of testing the respective abilities of the attorneys

involved upon the one side or the other. The purpose of a trial is to determine what is the truth, and what is justice under the facts and the law, and to that end the trial judge is not only permitted but it is his duty to participate directly in the trial to facilitate its orderly progress, in order to elicit the truth and to administer justice. His remarks or conduct in performing this duty will not constitute error if they are such as do not discriminate against or prejudice either party in a civil proceeding, or to prejudice the constitutional rights of an accused in a criminal case. Improper remarks may usually be cured by cautioning the jury, or by correcting at the time, or by instructing in his charge not to consider them. He must admonish counsel if occasion demands and caution witnesses, but he must do so in a manner not to create a prejudice or to indicate an opinion on the facts. It is always permissible for the court, and, if it appears necessary for him to do so, it is his duty to propound to witnesses such questions as he deems necessary to bring out any relevant and material evidence, without regard to its effect, whether beneficial to one party or the other. He should remember that he is not employed as one of the attorneys, however, and should not engage in an extended examination, or cross examination unless necessary. The examination of a witness by the presiding judge must be conducted without prejudice to an accused, and in such a manner as to impress the jury that the judge is impartial and is not indicating his opinion on the facts. See *State* v. *Jones,* 137 Me. 137, 16 Atl. (2nd) 103; *York* v. *Railroad Co.,* 84 Me. 117, 128, 24 Atl. 790; *Benner* v. *Benner,* 120 Me. 468, 115 Atl. 202; *Com.* v. *Oates,* 327 Mass. 497, 99 N. E. (2nd) 460; 23 C. J. S. "Criminal Law," 344 Sec. 911; 58 Am. Jur. "Witnesses," 310, Secs. 557, 558; 88 C. J. S. "Trial," 137, Sec. 51.

We have examined the complete record of this case with care and we have noted each and every question asked dur-

ing the trial by the justice presiding. There was nothing in any of the questions asked which prejudiced the rights of the respondent, and we find nothing said or done by the presiding justice to indicate any opinion (if he had an opinion) on the facts. The record shows that the conduct of the presiding justice was fair and impartial. In addition to the apparent impartiality of the questions, the court in charging the jury impressed upon the jury that he had no opinion and that in asking the questions that he did ask, it was in an endeavor to "clear up" some facts not plain to him and which might not be clear to the jury. See *Commonwealth* v. *Oates, supra.* We find no abuse of the right on the part of the presiding justice to ask questions, and no violation of the statutory prohibition relative to expressing an opinion.

Exception V was taken to the denial of motion for a directed verdict, and raises the same questions as the appeal. *State* v. *Smith,* 140 Me. 255, 283; *State* v. *McKrackern,* 141 Me. 194, 197. This exception was waived by filing motion to set aside verdict and appeal. *State* v. *DiPietrantonio,* 119 Me. 18.

Exceptions VI, VII, VIII were requested instructions that were refused except as covered in the charge. The first requested instruction stated that "the force required in a rape case is that force by which the dissenting female is subjected to and put under the power of the assailant, so that he is able, notwithstanding her opposition, to have sexual intercourse with her. Where the female is physically and mentally able to offer resistance, force is a necessary element of the offense." This requested instruction was properly refused. The subject had been fully and clearly covered in the charge. Force is a necessary element in every case brought under Revised Statutes, 1954, Chap. 130, Sec. 10, "by force and against her will." This requested instruction in its definition of "force" might give

the impression that it was necessary for conviction that the respondent should have in some manner rendered the female so unconscious that she had no will. The word "force" itself is its own best definition, and it is a word understood by everyone.

The next requested instruction contained the statement that the female must "put up the greatest effort of which she was capable * * * * because resistance by the female is a necessary element of the crime of rape." This is not the law. Resistance is not necessarily an element. It depends on circumstances. The Maine statute does not say that it is an element. Resistance, if any, and the amount and kind of resistance, is evidence to show consent or lack of consent, and like all.evidence is to be carefully considered by the jury. This request was properly refused. It was properly covered in the charge.

The third requested instruction contained the statement that threats of physical bodily injury in a case of rape must "create in the female a reasonable apprehension of great immediate bodily harm, such threats being accompanied by a demonstration of force and being made prior to the act." The word "immediate" and the words "being accompanied by a demonstration of force" are not necessarily the law. The fear might be of a future injury threatened. The instruction given was correct and was in part as follows: "You have in your deliberations the right to consider as to whether or not Mary Helen Sweeney was put under fear. There has been some testimony that she feared the respondent. It is for you to decide, and it is further for you to give such weight as to whether or not that fear prevented her from offering any greater resistance than she did offer, as you may find it. I again say to you that in order for you to find the respondent guilty, the act, that is admitted, must have been committed with force and without consent." See 3 Greenleaf on Evidence, 2nd Ed. "Rape," 192.

Exception IX. The respondent excepted to the whole charge as being unduly a resume of the State's evidence, and unduly commenting on the State's evidence. Exception X. The respondent excepted to the charge "in where your Honor has ruled out the question of chastity of the woman being not in issue" and Exception XI "wherein Your Honor has ruled out the fact that the Portland Police have not been brought in, and the fact that the parents of the child have not been brought in, and the fact that other evidence by the Sheriff or by the County Attorney's office may not have been brought in."

The record shows that the presiding justice did not "rule out" any testimony as stated in this exception. He so stated to the jury when the exception was taken. He did call the attention of the jury to the fact that the questions before them were the allegations in the indictment. This is not a civil case where a party does not testify and inferences may be drawn, as in *Berry* v. *Adams,* 145 Me. 291 cited in the respondent's brief. Even if the respondent had not testified no inferences would be against him. R. S., 1954, Chap. 148, Sec. 22. Exception XII. Counsel for respondent excepted to the whole charge "as not representing the law in the case of rape."

The charge was an excellent one, brief, clear, and not involved with extraneous matter, and easy to understand. The law and contentions were plainly and correctly stated. "Reasonable doubt," the "presumption of innocence," venue, and the necessity to prove that the offense occurred within the County of Androscoggin or within 100 rods, with the three elements of the crime as charged in the indictment, viz.: (1) carnal knowledge (2) force and (3) against her will, were completely covered. The presiding justice further impressed upon the jury that the burden on the part of the State was to prove the allegations in the indictment beyond all reasonable doubt. The reasons for the questions asked of

witnesses, by the court, were again stated in the charge, and that he had no opinion and no opinion was intended to be expressed, and that the jury must not consider anything beyond what the evidence itself disclosed. There was no undue resume of the State's evidence or undue comment thereon. The sexual intercourse was admitted, and the only questions related to force and consent. The chastity of the female was not in issue. Unchastity is no defense. *State* v. *Flaherty*, 128 Me. 141, 146 Atl. 7. The fact that the State did not produce more evidence at the trial was a matter for argument, and was evidently used by respondent's counsel in argument, because the presiding justice said, and correctly said, at the close of the charge, "there has been some reference made here to what the Portland Police did or did not do, what the Auburn Police did or did not do, what the Sheriff's Department did or did not do, what the prosecuting Attorney's office did or failed to do. There has been some intimation that the parents of the girl did or failed to do something. We are not here trying the Portland Police Department. We are not trying the Auburn Police Department. We are not trying the Sheriff's Department or the prosecuting Attorney's Department. Neither are we passing judgment on the parents of Mary Helen Sweeney. The sole issue in this case is: Did this respondent have carnal knowledge of Mary Helen Sweeney with force and without her consent? And in arriving at that, and in considering the evidence, you have a right to consider all of the physical evidence that was produced here, that is, the objective evidence—the skirt, the brassiere, the ear rings, as to whether or not there were any marks or bruises on Mary Helen Sweeney. By that I am not telling you that there were. It is for you to say, from the evidence presented to you. It is for you to say whether or not there were any marks on the respondent, and what caused those marks. It is for you to say as to whether Mary Helen Sweeney yelled, as was described here, and it is for you to

say what caused her to yell. It is for you to consider every element of the evidence presented to you. It is for you to give such weight to that evidence as you see fit to give it, and after you have given the case due consideration it is your duty, if you find the State has not satisfied you beyond that reasonable doubt that the respondent committed the offense he is charged with, to return a verdict of Not Guilty. By the same token, without fear or favor, sympathy or prejudice, if you find that the State has proven to you the elements necessary of proof as I have outlined them to you, and that proof has satisfied you beyond that reasonable doubt as I have previously defined it to you, it is equally your duty to return a verdict of Guilty in this case."

The issue raised on the appeal is whether in view of all the evidence, the jury was justified in believing beyond a reasonable doubt that the respondent was guilty. *State* v. *Smith,* 140 Me. 255, 286; *State* v. *Hudon,* 142 Me. 337, 345; *State* v. *DiPietrantonio,* 119 Me. 18, 109 Atl. 186.

The complaining witness, Miss Sweeney, testified that the crime was committed in Turner in Androscoggin County "not far from the Chickadee Restaurant." Deputy Sheriff Thorne said it was eleven miles from Auburn to Turner. Sheriff McGraw testified that it was fourteen miles from the Chickadee to the County line in Canton. Officer Stewart testified that the respondent told him that it happened "just outside of Auburn." The respondent testified at the trial, however, that it happened in Canton "8 or 10 miles beyond the Chickadee," and according to the Sheriff 8 or 10 miles beyond was still in Androscoggin County. Dipietro admitted he told Portland police he got out of the car at Turner leaving the respondent and Miss Sweeney in the car, but at the trial, in testifying for the defense, Dipietro said "it was Canton I guess." The court in charging the jury on this point said "if the crime was not committed in Andro-scoggin County then your verdict must be Not Guilty re-

gardless of whether or not the respondent was guilty in this instance of having committed the crime with which he stands charged." The jury was amply justified in determining jurisdiction in Androscoggin.

The respondent admitted that he had sexual intercourse with the prosecutrix on the night in question. This case differs from *State* v. *Wheeler,* 150 Me. 332 where there was complete denial of all the elements of the crime. Here, in this case, the torn skirt, ripped brassiere and broken ear ring, introduced in evidence, and her testimony which was "reasonable and credible," together with the respondent's admissions, would justify the jury to find guilt beyond a reasonable doubt. In addition to this, however, there was the testimony of the Sheriff of Androscoggin County who went to Portland police headquarters and talked with the respondent Dipietrantonio, his cousin Dipietro, and Miss Sweeney, and that the respondent said "Nicky was as responsible as he was, or words to that effect." The sheriff further testified that Miss Sweeney's face was swollen, and that the respondent had a scratch on his face. Officer Stewart of Auburn police department testified that, when finger printing the respondent, he asked respondent "if he had raped this girl first, before his cousin, and he said, he did" * * * *. "I asked him if he enjoyed raping this girl and he answered 'I don't think so.' " Stewart further said the respondent "had two scratches on the right side of his face" * * * "and I asked him then if she had long sharp fingernails and he said 'I guess they were.' "

The case was fully and carefully tried. The record is extensive. We have examined the evidence with care, aided by the exhaustive briefs of counsel. The respondent's rights were taken care of by eminent, thoroughly capable, and experienced counsel. The record shows no partiality on the part of the justice presiding. The jury was amply justified

in finding guilt beyond a reasonable doubt. We find no reversible error. The entry must be

*Exceptions overruled.*

*Appeal dismissed.*

*Judgment for the State.*