Hillsborough,
No. 5024.

FLOYD BELL & a. v. ARLENE B. PRIMEAU, *Adm'x.*

Argued June 5, 1962.

Decided July 16, 1962.

*Craig & Craig* and *Arthur J. Costakis* (*Mr. Costakis* orally), for the plaintiffs.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A. Morse* (*Mr. Morse* orally), for the defendant.

DUNCAN, J. At the time of the accident all of the plaintiffs except Bell were members of the United States Air Force stationed at Grenier Field in Manchester. Bell was a former enlisted service man who had re-enlisted on October 26, 1956, following the accident but before his disability had terminated. Bell and Winquist were hospitalized; Halajcsik and Toro were not, but were treated at the base hospital dispensary.

Early in the trial, the Court ruled that Winquist's medical and hospital bills which were "paid by the Air Corps" might be received in evidence; but excluded evidence as to all plaintiffs of the varying periods for which they were unable to perform their regular duties, and of their base pay, quarters allowances, or flight pay, which in fact they had received in spite of their disabilities.

The plaintiffs excepted to the latter rulings, and sought instructions to the jury that it should not consider, "by way of diminishing the damages, the fact that [the plaintiffs] were paid during this period."

"In actions of tort for personal injuries damages are recoverable for loss of capacity to earn . . . measured by the amount of wages which [the injured person] would have earned during the period of his disability had he not been injured." *Dowling* v. *Shattuck*, 91 N. H. 234, 242. The issue presented by the cases before us is whether a plaintiff may recover for loss of earning capacity when in fact he has sustained no loss of earnings during disability, because his compensation has nevertheless been paid.

The rule of law relating to such matters, known as the "collateral source rule," which provides that the damages may not be mitigated on account of payments received by the plaintiff from sources other than the defendant has been adopted in one or more of its applications by many jurisdictions, including this one. While the rule has been criticized by commentators and text writers as anomalous, and illogical, it continues to find support in litigated cases. 2 Harper & James, The Law of Torts, ss. 25.19, 25.22; McCormick on Damages, *pp*. 309, 310; Schwartz, The Collateral-Source Rule, 41 B. U. L. Rev. 348; Note, 63 Harv. L. Rev. 330; Annot. 18 A.L.R. 667, 95 A.L.R. 575. See also, Annots. 52 A.L.R. 2d 1451 (accumulated leave), 68 A.L.R. 2d 876 (governmental medical services), 70 A.L.R. 2d 480 (subrogation of employer), 75 A.L.R. 2d 885 (pension benefits).

In this jurisdiction, it has been held that a tort defendant can derive no benefit from the fact that the plaintiff was insured (*Rolfe* v. *Railroad*, 69 N. H. 476), or that his bills have been paid by a fireman's relief association (*Clough* v. *Schwartz*, 94 N. H. 138) or that he has received workmen's compensation (*Abbott* v. *Hayes*, 92 N. H. 126), or retirement benefits. *Descoteau* v. *Boston & Maine R.R.*, 101 N. H. 271, 278. See also, *Waumbec Mills* v. *Bahnson Service Co.*, 103 N. H. 461, 464.

It is suggested by the defendant that the United States Government does not occupy the position of the usual employer (see *United States* v. *Standard Oil Co.*, 332 U. S. 301), that the plaintiffs continued to receive their compensation by reason of statute rather than contract, and that the rule that the collateral payments may not be shown in mitigation of damages should not be extended to cover men in the armed services, such as these plaintiffs. We see no reason to single out such plaintiffs from all the plaintiffs who may receive collateral benefits, thereby relieving the defendants sued by them from responsibilities imposed upon other defendants no less deserving of consideration. This defendant has no reason to complain that she is held liable in damages for loss of earning capacity suffered by an airman because the Government, or the Congress, sees fit to continue his pay during disability, without subrogating the United States to his rights against her. See *United States* v. *Standard Oil Co.*, 332 U. S. 301, *supra*. If this result is thought socially undesirable, or an injustice to taxpayers, it should be remedied by legislation.

We conclude that under the rule which prevails in this jurisdiction the plaintiffs were entitled to recover for loss of earning capacity, and their exceptions are sustained.

*New trials.*

All concurred.