**STATE of Maine**

**v.**

**Lucien M. AUBUT.**

Supreme Judicial Court of Maine.

Jan. 14, 1970.

Robert T. Coffin, County Atty., and Alexander A. MacNichol, Asst. County Atty., Portland, for plaintiff.

Gaston M. Dumais, Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

After conviction of the crime of uttering a forged instrument (17 M.R.S.A. 1501), the defendant has appealed. Several points of appeal are urged:

1. The Court erred in refusing to disqualify itself as being prejudiced towards the appellant by making his bail, pending trial in an excessive and oppressive amount, to wit, from $1,000 in District Court to $10,000 at arraignment, the Court well knowing of defendant's lack of assets.

A careful review of the record reveals these facts: On September 17, 1968, the defendant was in Court with his privately-retained attorney. Upon arraignment, he entered a plea of not guilty and the case was ordered continued from day to day for trial. The following colloquy ensued:

"The Court: Bail satisfactory?

County Attorney: The bail is a thousand dollars. I understand this man is on parole and has been reporting quite regularly on that; is that correct?

Probation Officer: So I understand. I am not personally acquainted with him, but we heard he was reporting.

The Court: He is a parolee?

Probation Officer: Yes, from Maine State Prison.

Defendant's Attorney: I have more bail here, your Honor. It is the same bail we had before; we had them come up.

The Court: I am not just happy with a thousand dollars bail for uttering a forged instrument. It has a sanction of as much as 10 years if it is proved. If the offense is committed by a person currently on parole, and I don't know anything about the background or history, but ordinarily you wouldn't consider a parole violator, if this is a violation, is that kind of a risk.

County Attorney: I would move that the bail be increased your Honor.

The Court: What is the Defendant's capacity to furnish bail?

Defendant's Counsel: We had the same sureties before. We have a Reverend who is willing to sign; we have another property owner in Portland. We have got plenty; it doesn't really matter.

The Court: I am setting the bail at ten thousand. * * *"

Later, just before the trial was scheduled to commence, the defendant moved for a continuance. The stated purpose of the Motion was so the case could be tried before another Court. The defendant said he felt the presiding Justice was prejudiced toward him because he was a parolee and the Justice could not sit impartially. Counsel then stated that the reason he felt the Court was prejudiced was because it had increased the bail from $1,000 to $10,000

It is noted that the defendant's attorney stated in open Court at the time of arraignment that the defendant had plenty of bail available and "it doesn't really matter" what amount the Court fixed as bail. Immediately after the amount was fixed the defendant furnished bail and was released.

■ This Court is cognizant of the heavy volume of cases on the criminal docket in Cumberland County. A Justice of the Superior Court presiding in a criminal term has the responsibility of setting bail in such amount there is reasonable likelihood the defendant will appear at the time fixed for trial. He is required to give consideration to the nature and circumstances of the offense charged, the financial ability of the defendant to give bail and the character of the defendant as revealed by his record of criminal activities in the past. See M.R. Crim.P., Rule 46(c). The defendant's attorney had indicated that the defendant could furnish bail in any amount and the issue of bail "doesn't really matter."

We find the Court acted wisely and properly when it increased the bail from $1,000 to $10,000 under the circumstances of which it had knowledge.

■ Thereafter, when faced with a challenge to his impartiality, the presiding Justice had to give consideration to many factors. Against the wishes of the defendant that he disqualify himself, the Court had to consider:

(1) He felt no bias or prejudice against this defendant whom he had never previously seen and of whom he had never heard.

(2) The Court had a large number of cases on its Docket.

(3) The Motion for Continuance was filed just before the trial was to start.

As was said in Bond v. Bond, 127 Me. 117, 141 A. 833:

"* * * and no case should be transferred unless such bias or prejudice actually exists on the part of the judge that he cannot lay it aside.

"If conscious of any such prejudice, a judge ought not to sit, and should withdraw *suo motu*; but, unless it clearly appears from the evidence that he is disqualified by such a deep-seated bias or prejudice that he could not impartially preside, or that the presence of such bias or prejudice is the only inference which can be drawn from the evidence in support of a motion to transfer, it cannot be said on exceptions there is error in law in his denial of the motion."

The Justice could properly consider that he would not be justified in putting the burden of an additional trial on the next justice assigned to the County merely because a completely unfounded claim of prejudice was lodged against him by a defendant.

■ Great care should be exercised to the end that rights of persons charged

with crime be zealously protected, but the rights of the public must also be given consideration. State v. Dipietrantonio, 152 Me. 41, 122 A.2d 414 at 419.

■ If the public's rights are to be vindicated, the administration of justice must be orderly. No continuances should be granted either at the behest of the State or of the defendant unless good cause is shown therefor. No Justice of the Superior Court ought disqualify himself from conducting the business of the Court, for frivolous reasons.

The complaint of prejudice which the defendant makes in this case is completely unsupported by any evidence and is unjustified.

■ 2. The defendant alleges it was reversible error for the presiding Justice to refuse to permit cross-examination of witness Bither without the presence of the jury prior to the testimony before the jury.

It appears from the record that Bither was the bank teller who had cashed the forged instrument. He was called by the State to identify the defendant as the person who cashed the check. Defendant's counsel, in asking leave to conduct a cross-examination of the witness outside the presence of the jury, stated that his purpose in doing so was to "have some extensive investigation to find out how much work was done by Mr. Bither (the witness), the State and the Police so that he can now state that the defendant was before him some three months ago a matter of seconds."

No claim is advanced that there was an extra judicial identification made so that United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, or Stovall v.

Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199, might apply.

The objection which was raised was directed to the weight to be accorded the evidence and not to its admissibility. The ruling was one entirely within the Court's discretion under the circumstances here existing. The presiding Justice very properly ruled that there was no occasion for cross-examination outside the hearing of the jury.

■ There may well be situations in which there is danger a witness might introduce inadmissible and prejudicial evidence in response to a proper question. In such cases it would be not only proper but advisable for a preliminary interrogation to be conducted outside the presence of the jury.[1] Such is not the case here. The defendant takes nothing by this objection.

■ 3. The State called as a witness, a teller at a different branch of the Canal Bank from that in which the forged check was cashed. Over objection, she testified that the defendant presented her a check of exact tenor as the check which he was convicted of uttering, on the same morning the check was cashed by witness Bither. She testified that when the defendant was unable to produce identification, she refused to cash the check. He then told her his identification was in his automobile. He took the check and left the Bank, stating he would return as soon as he got his identification from the automobile. She said he never returned.

The witness' testimony disclosed an attempt to commit the crime of uttering. 17 M.R.S.A. 251.

The County Attorney informed the Court the evidence was being offered to show knowledge on the part of the defendant that the check was a forgery.

[1]. There are the circumstances described in State v. Merrow, 161 Me. 111, 208 A.2d 659, in which the Court is required to have a preliminary examination of the witness conducted outside the presence of the jury.

It is well established that evidence that about the same time the defendant uttered a forged instrument he attempted to utter or did utter another forged instrument in another place is admissible to show his knowledge that the instrument in question was counterfeit. State v. McAllister, 24 Me. 139; Wharton's Criminal Evidence, twelfth edition, Vol. 1, Sec. 236, page 515, and cases cited; Underhill's Criminal Evidence, fifth edition, Sec. 774, page 1778, and cases cited.

Since the evidence was properly received, the defendant's claim of reversible error must be denied.

4. The defendant also complains that the County Attorney argued improperly in his rebuttal to appellant's argument. Neither in his brief nor in oral argument does the defendant specify that about which he complains. We have examined the record with care and we find no occasion for objection to the rebuttal argument of the County Attorney.

5. The defendant claims reversible error in the Court's instruction to the jury. Specifically, objection is made to this language:

"* * * Moreover, lest you be misled by the emphasis which I am to put upon these things, remember that the presumption of innocence of the accused and the rule that the State must prove his guilt beyond a reasonable doubt are in the nature of protective shields, not swords of offense. The presumption of innocence may be overcome by the proof of facts which satisfy you beyond a reasonable doubt of the guilt of the accused, and, though all possible doubt may not be resolved in your minds, yet the facts may be established beyond a reasonable doubt. Were it otherwise, no one could be convicted of the commission of a crime, and criminals unwhipped of justice would prey upon the public, the enforcement of law and order would be an impossibility, and liberty under the law would become a sad memory of the past."

In effect the instruction emphasizes the distinction between proof beyond a reasonable doubt and proof beyond any possible doubt and informs the jury that if the latter test were employed, conviction by jury verdict would be virtually unattainable.

The language to which objection is made is found in many instructions to juries given by presiding justices in years past.

While the expression,

"* * * and criminals unwhipped of justice would prey upon the public, the enforcement of law and order would be an impossibility, and liberty under law would become a sad memory of the past."

when standing alone, sounds argumentative, it must be considered in the light of what was said before it.

"The correctness of a charge must be determined from the entire charge and not from isolated parts." State v. Warner (Me.) 237 A.2d 150 at page 159.

The presiding Justice had earlier in his charge described the presumption of innocence and its effect in great detail. He also made it abundantly clear it was the responsibility of the State to establish the defendant's guilt by evidence convincing in its effect beyond a reasonable doubt. Reasonable doubt was defined in terms approved by this Court in State v. Reed, 62 Me. 129 (1874), again in State v. Rounds, 76 Me. 123 (1884) and more recently in State v. Merry (1939), 136 Me. 243, 8 A.2d 143.

When viewed as a whole there was no reversible error in the instructions.

6. After the jury had returned its verdict of guilty the defendant requested that the Court interview one or two jurors who served on the panel to ascertain whether or not there was any matter not in evidence discussed during the jury's deliberations.

At voir dire three prospective jurors disclosed they were depositors in the Canal

National Bank. Prior to the voir dire the County Attorney had informed the defendant and his counsel a photographing device regularly used by the Bank had taken the defendant's picture while he was allegedly presenting the forged check to be cashed. The photograph was shown to the defendant.

No request was made that the prospective jurors who were depositors in the Canal Bank be disqualified for cause. Although the defendant had unused peremptory challenges, none were exercised. The jurors were impaneled and upon inquiry being made the defendant stated that the jurors were acceptable.

 The photograph was not introduced in evidence during the course of the trial. The defendant argued that some of the jurors who were depositors of the Canal Bank *might have* known that the Bank employed this photography device and *might have* disclosed this fact to the other jurors. The defendant never suggested to the Court that he had knowledge or even that he had heard rumors that any such discussions took place in the jury room.

> "Evidence of what is said by jurors while deliberating upon a case will not be considered by the court to set aside the verdict." Trafton v. Pitts, 1882, 73 Me. 408.[2]

The defendant's request was properly denied by the Court.

7. The defendant complains that the verdict was contrary to the evidence and contrary to the weight of the evidence in the case. A very careful reading of the record convinces us that the jury returned the only verdict which could possibly be reached by a conscientious jury.

The entry must be

Appeal denied.

2. See also Patterson v. Rossignol (Me.) 245 A.2d 852, at 856, for excellent discus-

sion of limitations on use of statements of jurors to impeach verdict.