Katherine F. WERNER

v.

Rebecca White LANE and Fox and Ginn.

Supreme Judicial Court of Maine.

Nov. 2, 1978.

Norman & Hanson by Robert F. Hanson (orally), Dana A. Cleaves, Portland, for plaintiff.

Richardson, Hildreth, Tyler & Troubh by Harrison L. Richardson (orally), Glenn R. Anderson, Ronald D. Russell, Portland, for defendants.

Before POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.[1]

On November 24, 1968 in late afternoon, Katherine Werner, the plaintiff, a woman in her late fifties, left her home on Jordan Avenue in South Portland where she resided with the intention of visiting the Holy Cross Church in the neighborhood. At the T intersection of Jordan Avenue with Highland Avenue, Miss Werner walked to the other side of Jordan Avenue so as to use the only crosswalk at that point which would permit her to reach the northerly sidewalk on Highland Avenue. She testified that, before attempting her crossing at the crosswalk, she looked for traffic in both directions but saw none. Without taking another look, she had nearly completed the crossing when she was struck by an automobile operated by the defendant, Rebecca Lane, which Miss Werner admitted she never saw. The defendant herself, a nineteen year old young lady with 1½ years of driving experience, testified that she had a clear view of Highland Avenue as far as Jordan Avenue and had the lights going on her car, but saw the plaintiff too late to stop the automobile, even though she slammed on the brakes. She struck Miss Werner with her right front fender, propelling her through the air some 10 to 15 feet away, causing the plaintiff to suffer severe facial abrasions, a dislocated shoulder, multiple fractures of her pelvis and a broken knee.

The plaintiff's complaint, dated June 20, 1973, seeks compensatory damages for serious permanent physical and mental injury allegedly resulting from the accident, plus damages for the claimed aggravation of a previous psychiatric disorder and for consequential monetary loss due to past and future medical, hospital and nursing expenses. This negligence action was tried in July, 1975 before a Cumberland County jury which returned a (6 to 2) verdict for the defendant, indicating that Mrs. Lane was not guilty of any negligence which was a proximate cause of the accident.

The plaintiff has seasonably appealed from the ensuing judgment on several grounds: (1) the jury verdict is erroneous as a matter of law; (2) misconduct of counsel has denied the plaintiff a fair trial; (3) the refusal to give the jury a requested instruction was reversible error and (4) there was an abuse of discretion in the presiding Justice's denial of the plaintiff's motion for a new trial.

We sustain the appeal.

The plaintiff's motion for a new trial pursuant to Rule 59(a) M.R.Civ.P.[2] should have been granted by the Justice below, as a review of the whole record convinces us that errors in the conduct of the trial deprived the plaintiff of that fair and impartial trial to which she was entitled under the law and the Constitution of Maine. It was an abuse of discretion for the presiding Justice to deny the same.

■ With the advent of the new rules of civil procedure adopted December 1, 1959, all motions for a new trial, for whatever cause, must now be addressed to the trial justice. Reporter's notes, Maine Civil Practice, 2nd Ed., Vol. 2, Field, McKusick and Wroth, page 54. The former optional choice of presenting a motion for new trial directly to the Law Court was abolished, but, as expressly provided by the rule, the same reasons for which new trials could previously be granted, whether on a direct motion to the Law Court or otherwise, may serve as proper foundation for such a motion before the trial court under the present mandated practice.

"The justice before whom an action has been tried may on motion grant a new trial to all or any of the parties and on all or part of the issues *for any of the reasons for which new trials have heretofore been granted* in actions at law or in suits in equity in the courts of this state. . . . . ."

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. Rule 59(a), M.R.Civ.P., provides in pertinent part:

When, upon review of the whole record, it was obvious that, due to the cumulative effect of multiple serious and prejudicial trial errors, a party did not get that impartial and fair trial to which under the law he was entitled, the Law Court did not hesitate to sustain a motion for a new trial. *Megguier v. DeWeaver*, 139 Me. 95, 27 A.2d 399 (1942); *Simonds v. Maine Telephone & Telegraph Co.*, 104 Me. 440, 72 A. 175 (1908); *Pierce v. Rodliff*, 95 Me. 346, 50 A. 32 (1901). Trial misconduct on the part of counsel similarly caused the setting aside of jury verdicts on motion for a new trial. *Megguier v. DeWeaver*, supra; *Ritchie v. Perry*, 129 Me. 440, 152 A. 621 (1930).

■ In appraising at the appellate level the propriety of the decision of the trial court upon a motion for a new trial, the test to be applied is, whether a clear and manifest abuse of discretion on the part of the trial justice is shown. *Chenell v. Westbrook College*, Me., 324 A.2d 735 (1974). It is the same rule as applies in the grant or denial of a motion for a mistrial, the latter usually being raised prior to verdict, while the motion for a new trial comes after the entry of judgment. See *Quinn v. Moore*, Me., 292 A.2d 846 (1972).

■ The rule applies, even if the technical niceties of procedural requirements have not been complied with, where the error of which the party appellant complains has deprived him of a fair trial and has resulted in injustice. *Crocker v. Coombs*, Me., 328 A.2d 389 (1974).

The plaintiff claims that the argument of the defendant's counsel to the jury constituted such misconduct on his part as to deprive the plaintiff of a fair and impartial trial and that the trial Court's failure to grant her motion for a new trial was reversible error.

In order to understand the plaintiff's contention, we must review to some extent what transpired at trial prior to counsels' closing arguments. During the trial, counsel for the plaintiff sought to prove that the accident of November 24, 1968 so aggravated a previous psychiatric disorder with which Miss Werner was afflicted that she had to be hospitalized at the Augusta Mental Health Institute, a state operated facility. As part of her claim for damages, the plaintiff attempted to introduce in evidence a bill from the Mental Health Institute for medical services rendered to her. The defendant's counsel seasonably objected, contending, out of the presence of the jury, that the plaintiff was not entitled to recovery of damages for such services, because the State did not intend to seek reimbursement for the medical care furnished Miss Werner. The presiding Justice, however, admitted the proffered document in evidence, ruling that the plaintiff was entitled to be compensated for the reasonable value of the medical assistance supplied gratuitously by the State.

In spite of the above ruling (as to which proper objection had been raised for later purpose of appeal, if necessary), the defendant's counsel in his closing argument chose to reveal to the jury that the plaintiff would not be required to pay that bill from the Mental Health Institute. Furthermore, the defendant's counsel directly charged the plaintiff's attorney with playing a bingo game in the case and trying to perpetrate a fraud. The trial Court passively permitted the critical evaluation of the conduct of the plaintiff's counsel without any specific admonition to the jury in relation thereto. The offensive portion of counsel's argument to the jury may be seen by consideration of the following excerpt:

"I have not produced them [Drs. Kunkle and Turcotte], because I don't think it is necessary to produce them. It's their burden. In the two weeks where we are today, they're giving you a whole bunch of records and say 'Look around in there and find something that says post-traumatic accident' and then tag this girl with a legal responsibility to pay some enormous sum in damages. *It's a fraud.*

\* \* \* \* \* \*

"There are a lot of records in here. I have told you that you've got to look through them. I tried to give you some guidelines and guidance. Now, I prom-

ise, I promise two more things. One, [plaintiff's counsel] has put this figure up on the board. All right. That, to me, is some[thing] completely and totally outside the province of any attorney that I cannot describe to you in any words—how deeply that offends my sense of what is appropriate.

"Ladies and Gentlemen, it is your province and yours alone to make that decision. And, the reason he is putting that number up there is *to psychologically condition you to get you started thinking about this thing like some kind of a bingo game. That's the reason he's doing it.* There has been books written about it. How to do this with juries. There are books, you may think that's odd, but there are [No evidence in the record supports this extraneous fact, if a fact]. He is trying to psychologically condition you to saying: 'Well, he's an Officer of the Court and he's a lawyer. He must know.' And so, he picks a number and sticks it up there. Then he invites you to play well; you now divide by two or by five or whatever. It's still money and *I resent it.*

"It is so deeply hostile to my whole notion of process for a number of reasons, one of which is [plaintiff's attorney] and [defendant's attorney] both have an interest in the outcome of this case. What I say to you isn't evidence. The Court will instruct you on that. He will tell you what [plaintiff's counsel] says isn't evidence. But, he is an Officer of the Court. You must not accept that figure for anything other than it is. *It is absolutely a bingo game.*

"The second thing is, if (sic) *there is no evidence in this case of any intention on the part of the State of Maine to seek payment for services. None. Katherine Werner is in a mental institution, the Augusta Mental Health Institute operated by the taxpayers of the State of Maine.*" (Emphasis supplied)

Notwithstanding the admission in evidence of the Mental Health Institute's bill for the medical care rendered Miss Werner and the Court's previous ruling in connection therewith for the benefit of counsel and the record to the effect that the plaintiff was entitled to be compensated for the reasonable value of the medical assistance supplied gratuitously by the State, yet, in his charge to the jury the presiding Justice instructed them as follows:

"Now, in fixing the amount of the award to the plaintiff, you will consider the elements of damage that I will now mention. The reasonable value *not exceeding the cost to the plaintiff* of the examination, tests, attention and care by physicians and surgeons, reasonably required and actually given in the treatment of the plaintiff and the reasonable value of any further treatment you find from the evidence is reasonably certain to be required. The reasonable value *not exceeding the cost to the plaintiff* of hospital accommodations and care, medication, orthopedic appliances, reasonably certain to be required and actually given or used in the treatment of the plaintiff or will reasonably be expected in the future to be required by the plaintiff." (Emphasis added)

The Court did not give any explanation of what he meant by using the expression, "the reasonable value not exceeding the cost to the plaintiff;" in view of the disclosure by the defendant's counsel that the State had no intention of seeking payment from Miss Werner, does it not logically follow that the jury must have understood the Court's statement to mean that, if the medical assistance was given at no cost to Miss Werner, then she would not be entitled to be compensated for any portion of the reasonable value of the services rendered?

▮▮ At the close of the Justice's charge to the jury,[3] counsel for the plaintiff

---

**3.** We note that counsel for the plaintiff did not raise his objection to the defendant's reference to the gratuitous aspect of the medical services rendered to Miss Werner and request some appropriate relief from the prejudicial remark until immediately after the Justice's charge to the jury, prior to the case being given to them for deliberation. This is contrary to the well

moved to have the Court instruct the jury to disregard opposing counsel's statement respecting the State's unconcern for payment of its bill but without success. The plaintiff now contends in this appeal that the closing argument of the defendant's counsel alerting the jury to the alleged gratuitous aspect of the medical services furnished by the Mental Health Institute in the context of a charge of fraud and the playing of a bingo game on the part of the plaintiff's counsel constituted misconduct so highly prejudicial to the plaintiff's rights that it was an abuse of discretion for the Court below to deny the motion for a new trial. We agree.

Initially, we note that under 34 M.R.S.A., § 2512 each patient is made legally liable for his support at the state hospital for the mentally ill from the date of his admission, but that, upon a determination after investigation that the patient is unable to pay all or part of the support charges, the department is authorized to charge less than the maximum rate established for such support pursuant to 34 M.R.S.A., § 2511, and, following the 1971 amendment of 34 M.R.S.A., § 2515, is explicitly empowered to cancel, suspend or reduce the charges in accordance with the ability to pay or may enter into an agreement with the patient under which the department may postpone billing for the care and treatment of the patient at the institution for any period of time. Section 2515, furthermore, provides that

"[t]he State of Maine shall have a claim against the estate of any patient and against the estate of any person legally liable for care and treatment under this

chapter, for any amount due and owing to the State of Maine at the date of death of such patient or such person, including any claim arising under an agreement entered into under this chapter, enforceable in the probate court.

\*　　\*　　\*　　\*　　\*　　\*

"The Attorney General shall collect any claim which the State may have hereunder against such estate. No such claim shall be enforced against any real estate while it is occupied as a home by the surviving spouse of the patient or person legally liable for care and treatment under this chapter and said spouse does not marry again."

Also, 34 M.R.S.A., § 2516 states that

"charges made under this chapter shall be a debt of the patient or of any person legally liable for care and treatment [support] under this chapter, recoverable in any court of competent jurisdiction in a civil action, in the name of the State of Maine."

The statutes are silent respecting any right of subrogation or intervention in favor of the State to enforce the State's right of repayment of the patient's indebtedness on account of the services rendered in connection with any action which the patient may have against a third party tortfeasor. Notwithstanding the foregoing statutory provisions specifically mandating reimbursement in the absence of actual departmental cancellation, suspension or reduction of the care and treatment charges as provided in 34 M.R.S.A., § 2515, we shall assume, for the purpose of our discussion of

---

settled rule which requires opposing counsel to object at the time improper argument is addressed to the jury so that the presiding justice may set the matter right and instruct them in relation thereto. *Mizula v. Sawyer,* 130 Me. 428, 157 A. 239 (1931). Ordinarily, such failure to protect one's interest would be considered a waiver of the point. Although we condemn the practice sanctioned in this case by the Court below, we rule that there was no waiver in the circumstances revealed by this record. Indeed, the defendant's counsel himself, prior to his closing argument to the jury, advised the Court as follows:

"It is agreed between counsel in the presence of the Court that any objection [plaintiff's counsel] has to my summation may be made after the Jury has been instructed notwithstanding any timeliness problems about the nature of the objection with respect to my argument."
The defendant's counsel cannot now take advantage of the plaintiff's failure to comply with the rule, conduct which he promoted with the tacit approval of the trial Justice. The case is distinguishable from *Michaud v. Steckino,* Me., 390 A.2d 524 (1978), where the Court was made aware of the alleged agreement between counsel post factum.

the issue, that the care and treatment furnished Miss Werner by the State at the Mental Health Institute was pursuant to an outright free state program.

True, the immediate issue is, whether it was misconduct on the part of defense counsel to suggest to the jury that Miss Werner will never have to pay for the services she received from the State, because no evidence was introduced to show that the State intended to collect the departmental charges so-called, i. e., indicating that Miss Werner was the beneficiary of the state program for the mentally ill at the taxpayers' expense. But, resolution of that issue must depend on the answer to two other questions, 1) whether the collateral source rule is the law in Maine, and 2) whether the receipt of the reference free services by Miss Werner from the state government did come within the collateral source rule.

The overwhelming weight of authority in the country is to the effect that the fact necessary medical and nursing services are rendered gratuitously to one who is injured as a result of the negligence of another should not preclude the injured party from recovering the reasonable value of those services as part of his compensatory damages in an action against the tortfeasor. This is known as the collateral source rule. Stated otherwise, it means that, if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor, he is still permitted to have full recovery against him.

The rule that collateral benefits are not to be subtracted from the plaintiff's recovery has been applied in a variety of circumstances, such as where benefits have been received under the terms of an insurance contract—see e. g., *Long v. Landy,* 35 N.J. 44, 171 A.2d 1 (1961); where the injured person's employer continued the payment of the person's wages during his disability— see e. g., *Audette v. New England Transp. Co.,* 71 R.I. 420, 46 A.2d 570 (1946); *Pryor v.*

*Webber,* 23 Ohio St.2d 104, 263 N.E.2d 235 (1970); where the injured employee had received sick leave benefits—see e. g., *Trujillo v. Chavez,* 76 N.M. 703, 417 P.2d 893 (1966); where industrial accident compensation benefits were involved—see e. g., *Amos v. Stroud,* 252 Ark. 1100, 482 S.W.2d 592 (1972); where the benefits came from the Veterans' Administration—see e. g., *City of Fort Worth v. Barlow,* 313 S.W.2d 906 (Tex. Civ.App.1958); *Bell v. Primeau,* 104 N.H. 227, 183 A.2d 729 (1962); where the injured person collected unemployment compensation relief—see e. g., *Sporn v. Celebrity, Inc.,* 129 N.J.Super. 449, 324 A.2d 71 (1974); where the plaintiff pocketed social security benefits or his medical expenses were absorbed by medicare—see e. g., *Stone v. City of Seattle,* 64 Wash.2d 166, 391 P.2d 179 (1964); *Rigby v. Eastman,* 217 N.W.2d 604 (Iowa 1974); *Merz v. Old Republic Insurance Company,* 53 Wis.2d 47, 191 N.W.2d 876 (1971); *Our Lady of Mercy Hospital v. McIntosh,* 461 S.W.2d 377 (Ky.1970). Free medical and hospitalization care has been viewed within the rule—see e. g., *Degen v. Bayman,* 241 N.W.2d 703 (S.D.1976); *Kretzer v. Moses Pontiac Sales, Inc.* 201 S.E.2d 275 (W.Va.1974); *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A.2d 414 (1962). The Massachusetts and New York courts, however, require proof of payment or at least incurrence of liability in connection with medical and hospitalization expense as a prerequisite to recovery of compensatory damages therefor from the tortfeasor. See *Daniels v. Celeste,* 303 Mass. 148, 21 N.E.2d 1, 128 A.L.R. 682 (1939); *McKay v. Town of West Seneca,* 51 A.D.2d 373, 381 N.Y.S.2d 892 (1976).[4]

Among the various rationales advanced in support of the collateral source rule, we find the foregoing most persuasive:

> "The philosophy underlying the Collateral Source Rule seems to be that either the injured party or the tortfeasor is going to receive a windfall, if a part of the pecuniary loss is paid for by an outside

4. We are aware that the collateral source rule has been severely criticized by the commentators. For the pros and cons respecting the rule, turn to *Moulton v. Groveton Papers Company,*

114 N.H. 505, 323 A.2d 906 (1974). See also *Sporn v. Celebrity, Inc.,* 129 N.J.Super. 449, 324 A.2d 71 (1974).

source and that it is more just that the windfall should inure to the benefit of the injured party than that it should accrue to the tortfeasor. This conclusion seems to be based on substantial justice. This reasoning, however, does not apply in a situation where the collateral source is the defendant himself. Under those circumstances no one gets a windfall and if a recovery were allowed under those circumstances the result would be that the plaintiff would receive a double recovery and that the defendant would be mulcted twice for the same item of damages." *Olivas v. United States,* 506 F.2d 1158, 1163–1164 (9th Cir. 1974).

See also *Gorham v. Farmington Motor Inn, Inc.,* 159 Conn. 576, 271 A.2d 94 (1970).

Without characterizing its ruling as an application of the collateral source rule, this Court in a tort action for injuries to his minor child has permitted recovery by the father of the reasonable value of necessary nursing services rendered gratuitously by the mother, quoting with approval the language of *Acme-Evans Co. v. Schnepf,* 105 Ind.App. 475, 15 N.E.2d 742 (1938):

> " 'If [plaintiff] is fortunate enough to secure the services of his wife in treating the injuries of their minor son, rather · than employing one who is not a member of the family and thus obligating himself to pay for such services, it does not lie in the mouth of the person responsible for the injury to complain.' " *Johnson v. Rhuda,* 156 Me. 370, 164 A.2d 675 (1960).

Accord: *Wells v. Minneapolis B. & A. Ass'n,* 122 Minn. 327, 142 N.W. 706, 46 L.R.A.,N.S., 606, Ann.Cas.1914D, 922 (1913).

The rule has been extended to cases where the gratuitous services were furnished by a state supported agency or public charity. *Phelan v. Santelli,* 30 Ill.App.3d 657, 334 N.E.2d 391 (1975); *Bennett v. Haley,* 132 Ga.App. 512, 208 S.E.2d 302 (1974); *Thoreson v. Milwaukee & Suburban Transport Co.,* 56 Wis.2d 231, 201 N.W.2d 745

(1972); *Dahlin v. Kron,* 232 Minn. 312, 45 N.W.2d 833 (1950). Contra *Di Leo v. Dolinsky,* 129 Conn. 203, 27 A.2d 126 (1942); *Gomez v. Black,* 32 Colo.App. 332, 511 P.2d 531 (1973).

■ In line with the overwhelming judicial opinion, we hold that the collateral source rule was applicable in this case and that it was highly prejudicial misconduct on the part of defense counsel to suggest to the jury that Miss Werner will never have to pay for her medical and hospitalization care, but that the same will be absorbed by the taxpayers.

However, the defendant contends that she was erroneously precluded from introducing such evidence at trial, where such evidence, it is claimed, was admissible for a legitimate limited purpose of disputing the reasonableness of the Institute's charges. Courts have recognized that evidence of receipt of benefits from a collateral source under certain circumstances might be admissible for purposes other than to mitigate damages recoverable from the tortfeasor. See *Congdon v. Howe Scale Co.,* 66 Vt. 255, 29 A. 253 (1894): bad faith; *McElwain v. Capotosto,* 332 Mass. 1, 122 N.E.2d 901 (1954): bad faith; *Ridilla v. Kerns,* 155 A.2d 517 (D.C.Mun.App.1959): fraudulent prolongation of convalescence period; *Jackson v. Beard,* 146 Ind.App. 382, 255 N.E.2d 837 (1970): impeachment; *Selgado v. Commercial Warehouse Company,* 86 N.M. 633, 526 P.2d 430 (1974); *Goodell v. Itt-Federal Support Services, Inc.,* 15 Wash.App. 639, 550 P.2d 1171 (1976): impeachment. But the facts in all the cited cases differ from those in the instant case and we are unable to comprehend how the mere fact that medical and hospitalization care has been provided gratuitously has any bearing on the reasonable value of such care.[5] See *Helfend v. Southern California Rapid Transit Dist.,* 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61 (1970).

---

**5.** We are not to be understood as meaning to preclude the probing into the several factors considered by the department in the establishment of the charges for care and treatment of

patients pursuant to 34 M.R.S.A., § 2511 in relation to their reasonableness, a point which we need not decide.

Having thus established improper conduct on the part of defense counsel in calling to the attention of the jury the gratuitous aspect of the medical and hospitalization care provided Miss Werner at the Institute, we must now determine whether it was an abuse of discretion for the Court below and, therefore, reversible error, for failing to give a cautionary instruction to the jury in regard thereto as requested by the plaintiff.

■ We must recognize that the revelation to the jury of the receipt by the plaintiff of benefits from a collateral source, as in the instant case, the gratuitous aspect of the medical and hospitalization care of Miss Werner, involves a substantial likelihood of prejudicial impact. The presiding Justice recognized as much, but refused to give the requested curative instruction on the ground that any effort at that time to cure the improper remark of counsel would cause more harm than good to the plaintiff's case. We believe that it was the duty of the presiding Justice to take positive steps to minimize the prejudicial effect of defense counsel's improper conduct. Instead, the Justice commented to the jury that the attorneys had tried the case well and had presented their side of the case adequately. Thus, such stamp of approval by the trial Justice of counsel conduct could only aggravate the prejudicial impact of defense counsel's improper statement. See *Reid v. Baumgardner,* 217 Va. 769, 232 S.E.2d 778 (1977).

Hence, we find that the refusal to grant the corrective relief requested was an abuse of discretion, and, coupled with defense counsel's other offensive charge of fraud, entitled the plaintiff to a new trial.[6]

New trials as to the issue of liability were granted where receipt of benefits from a collateral source were disclosed to the jury in the following cases: *Biehler v. White Metal Rolling & Stamping Corp.,* 30 Ill. App.3d 435, 333 N.E.2d 716 (1975); *Cook v.*

*Eney,* 277 So.2d 848 (Fla.App.1973); *Amos v. Stroud,* 252 Ark. 1100, 482 S.W.2d 592 (1972); *Suchy v. Moore,* 29 Ohio St.2d 99, 279 N.E.2d 878 (1972); *Tipton v. Socony Mobil Oil Company,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963); *Deighan v. E. Turgeon Construction Co.,* 95 R.I. 42, 182 A.2d 446 (1962).

■ We are not persuaded by counsel's suggestion that his improper remarks to the jury were mere replication to improper conduct of plaintiff's counsel in his own closing argument to the jury. True, the general rule is that a party whose counsel pursues improper argument and invites a reply is estopped to complain of the reply argument. See *Fredrick v. Dreyer,* 257 N.W.2d 835 (S.D.1977). But retaliatory foul blows by opposite counsel have no place in a court of justice. Mounting self-help prejudicial counteraction instead of seeking court relief from improper counsel argument should not be countenanced. See *Deschaine v. Deschaine,* 153 Me. 401, 140 A.2d 746 (1958).

■ As stated in *State v. Dipietrantonio,* 152 Me. 41, 48–49, 122 A.2d 414, 419 (1956):

"A Justice who presides over a jury trial occupies a place of great responsibility. He *must* not only *see* that a dignified order is maintained in the Court room and that the procedure is according to rule and statute, but also *that the rights of all parties are protected.* In a civil case he must hold the 'scales' evenly.

. . . A trial in a court of justice is not arranged for the purpose of testing the respective abilities of the attorneys involved upon the one side or the other. The purpose of a trial is to determine what is the truth, and what is justice under the facts and the law, and to that end the trial judge is not only permitted but it is his duty to participate directly in the trial to facilitate its orderly progress, in order to elicit the truth and to administer justice." (Emphasis ours)

---

6. In so holding, we intimate no opinion as to whether the error could have been cured by anything short of a declaration of a mistrial. We decide only that the presiding Justice

should at least have instructed the jury to disregard the reference to free medical and hospitalization care as requested.

We agree that counsel for the defendant had reason to be irritated by the argument made by plaintiff's counsel. The presiding Justice would probably have restrained counsel upon request, and it was his duty to do so sua sponte in the interest of justice, where plaintiff's counsel injected his own personal opinions to the jury, such as: "You couldn't pay me any amount of money on the face of this even to stay there [at the hospital for the mentally ill] one week, one day; "—"You couldn't give me twice that to go through six months what she has gone through." We visualize the extreme resentment which built up in defense counsel from opposite counsel's overemphasis on the so-called "hiring" for pay of the testimony of all defense experts, which prompted defense counsel's remark that he was being charged with producing "hired guns" in the courtroom. It is a matter of common knowledge in this inflationary period that the services of persons in the medical field come at a high price and their availability is very restricted due to the pressures of practice. This, with a jury of common experience, might mean that the payment of compensation to medical witnesses by the party calling them for the purpose of securing their expert opinions as evidence in the case may have very slight bearing upon the question of their impartiality. Nevertheless, such evidence is admissible for whatever effect it may have on their credibility. See *Grutski v. Kline,* 352 Pa. 401, 43 A.2d 142 (1945). Hence, remunerative arrangements between parties and their expert witnesses is legitimate subject matter for comment to the jury, though in the instant case its immoderate use may have been counter-productive. Such over-magnified attack on the believability of the defendant's expert witnesses did not justify defense counsel in his use of the reference retaliatory tactics in his own address to the jury.

Defense counsel's statement to the jury respecting the free medical and hospitalization care furnished Miss Werner, imbedded in the context of a charge of fraud in connection with the plaintiff's claim, was so highly prejudicial to the plaintiff's case, especially in view of her pre-existing psychiatric disorder, that it cannot be said with any degree of certainty that the jury did not conclude that, since the plaintiff was otherwise being taken care of, there should be no recovery at all against Mrs. Lane, notwithstanding the uncontradicted aspect of the evidence pointing to negligence on the part of the defendant proximately causing the accident. The offending remarks strongly suggested that the plaintiff and her attorney were grasping persons who were building up a law suit. The credibility of the plaintiff was seriously impaired by reason thereof. See *Garfield v. Russell,* 251 Cal.App.2d 275, 59 Cal.Rptr. 379 (1967); *Phelan v. Santelli,* 30 Ill.App.3d 657, 334 N.E.2d 391 (1975).

We are convinced that the plaintiff was not given that fair trial to which she was entitled under the constitution, for the additional reason that a review of the charge to the jury shows obvious error of serious dimension to which no objection was raised. Since we must remand the case for new trial, we need not discuss these errors in the jury instructions respecting the burden of proof and the plaintiff's right of way as a pedestrian on a crosswalk. They are not likely to recur. Other points of error raised in the appeal need not be considered.

The entry will be

Appeal sustained.

Judgment vacated.

Remanded for a new trial consistent with this opinion.