[Nos. 33165, 33166, 33167. Department Two. September 29, 1955.]

FRANK H. VENSKE *et al., Respondents,* v. JOHNSON-LIEBER COMPANY, *Appellant.*

RICHARD BROCK *et al., Respondents,* v. JOHNSON-LIEBER COMPANY, *Appellant.*

CLARENCE BROCK *et al., Respondents,* v. JOHNSON-LIEBER COMPANY, *Appellant.*[1]

[1]Reported in 288 P. (2d) 249.

*Lester T. Parker* and *Hull & Armstrong,* for appellant.

*Monroe Stephens (John E. Close,* of counsel), for respondents.

MALLERY, J.—The three separate causes of action herein were consolidated for trial and again upon appeal. The same automobile collision is involved as in *Sullivan v. Dunn,* 46 Wn. (2d) 255, 280 P. (2d) 668, which was an action for wrongful death by Sullivan's widow against Dunn.

The collision occurred on a clear, dry day on state highway No. 9 between Montesano and Aberdeen. The roadway is a twenty-foot cement pavement with a center stripe. It curves slightly at the point of impact, but otherwise runs straight east and west for a long distance in both directions. There is a broad graveled shoulder on the south side, and an oiled shoulder on the north used by slow-moving vehicles going up the grade.

At about 5:30 p. m., on March 12, 1953, Edward R. Sullivan, a traveling salesman in the employ of defendant, was hurrying to Tacoma. As he passed the Acme Wrecking Grounds, he was the rear vehicle of four traveling east. Ahead of him, in their respective order, were Nichols, Dunn, and Zwickel. Notwithstanding the presence of a no-passing line on the pavement, Sullivan made an illegal attempt to pass the three vehicles ahead of him. He was on the wrong side of the highway opposite the truck driven by Dunn, when Ruth Lougheed came toward him over the crest of the hill. She was forced to turn to the right onto the oiled shoulder of the highway, and Sullivan forced the Dunn truck

onto the gravel south of the highway. There is a legally insignificant difference in the theories of plaintiffs and defendant as to what happened from this point on.

The jury had a right to believe the plaintiff's theory and probably did, which included a racing and jockeying for position between Sullivan and Dunn. However, defendant produced the witness Albert Leo Bunch, who was riding in the Dunn truck, and who testified, on rebuttal, to the general effect that, shortly before the collision, the Dunn truck had gotten back onto the pavement behind the Sullivan car. The attempted triple pass made Dunn angry, and he again turned onto the shoulder and pulled up opposite Sullivan to whom he shouted from a distance of six feet.

After Dunn had driven on the shoulder for about one thousand feet, according to undisputed testimony, he started to crowd back onto the pavement. It is also undisputed that Sullivan could have dropped back and permitted Dunn to regain the same relative position on the highway that he had occupied among the vehicles in question, prior to the attempted illegal pass. The driver behind Sullivan realized the danger created by Dunn and Sullivan, and dropped back in order to afford either or both of them ample opportunity to take the vacancy thus created on the highway. Instead, Sullivan elected to stay even with Dunn and to turn to the left into the opposite lane of traffic when Dunn crowded him. Instantly, upon doing so, he struck the car driven in the opposite direction by plaintiff Venske, in which the other two plaintiffs were riding. They were injured and Sullivan was killed.

All of the events from the time of Sullivan's first illegal pass to the instant of the collision, had a bearing upon the impending collision. Defendant wants to exclude any consideration of Sullivan's initial negligence in making the illegal pass, upon the theory that it came to an end when Dunn first got back in line on the pavement. Of course, the collision did not occur at that time, but shortly after the illegal pass, a situation of peril existed due to the combined acts of Sullivan and Dunn, and their relationship to each other. Any reasonable person could recognize the peril of

the situation as the driver behind them did, who dropped back as a precautionary measure.

�as Dunn's driving on the shoulder for a thousand feet and shouting to Sullivan may or may not be considered as creating an emergency of the same duration, but, in any event, the peril was not one created by Dunn alone without fault on Sullivan's part. The emergency rule is therefore not available to defendant, because, while the negligent pass did not proximately cause the collision, it *did contribute* to the dangerous situation. Dunn's wrongful act in crowding Sullivan does not exculpate Sullivan for his unnecessary and therefore negligent election to invade the plaintiffs' lane of travel, thereby making the collision inevitable. No reasonable man would make such a choice. Defendant failed to meet the burden of going forward with legally sufficient excusatory evidence to explain why Sullivan's driving into the wrong lane of traffic was without fault. Sullivan was guilty of negligence, as a matter of law.

The jury's three verdicts were in the following amounts: (1) Frank H. Venske, $31,000; (2) Richard Brock, $94,519.30; and (3) Clarence Brock, $2,550. The defendant employer appeals in all three cases.

We will not discuss appellant's assignments of error directed to Sullivan's negligence, in view of our holding that he was negligent, as a matter of law, upon appellant's own version of the facts. However, there were prejudicial errors committed by the trial court touching other phases of the case.

The trial court committed prejudicial error in giving instruction No. 1, which permitted the jury to award damages on the basis of the mental anguish of the wives of respondents Frank Venske and Richard Brock. The wives were not in the car at the time of the accident.

■ The Washington rule is that mental anguish resulting from negligence cannot be made the basis of an action for damages in the absence of some impact or physical invasion of the person. *Gadbury v. Bleitz,* 133 Wash. 134, 233 Pac. 299, 44 A. L. R. 425; *Stiles v. Pantages Theatre Co.,* 152 Wash. 626, 279 Pac. 112; *Cherry v. General Petroleum Corp.*

*of California,* 172 Wash. 688, 21 P. (2d) 520; annotation, 18 A. L. R. (2d) 220.

■ The instant actions are not brought under the wrongful death statutes, which provide a special rule of damages limited to such actions only. The trial court erred in giving instruction No. 30, which permitted the jury to speculate as to *future* medical expenses which "might" be incurred. Such damages must be proved with reasonable certainty. *Taylor v. Lubetich,* 2 Wn. (2d) 6, 97 P. (2d) 142.

■ The trial court erred in giving instruction No. 31, in which the following language was used:

"The loss of the *right* to work and the *right* to enjoy the fruits of one's labor are elements which contribute to a person's mental suffering and distress of mind, and if you find that any of the plaintiffs have proved this loss with reasonable certainty, then you should allow such damages as will reasonably compensate him therefor." (Italics ours.)

The "right to work" and the "right to enjoy the fruits of one's labor" are not in issue and, hence, not compensable.

We do not discuss the other assignments of error because they are either not prejudicial or not likely to recur upon the new trial.

■ The judgment in cause No. 33167 (the Clarence Brock case) is affirmed, since no valid assignment of error has been made against it.

The judgments in causes Nos. 33165 and 33166 are remanded for new trials, with directions to limit the new trials to the issue of the amount of damages.

None of the parties in causes Nos. 33165 and 33166 will recover their costs.

HAMLEY, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

November 30, 1955. Petitions for rehearing denied.