[No. 1459-3.    Division Three.    June 15, 1976.]

RAYMOND GOODELL, *Respondent*, v. ITT-FEDERAL SUPPORT SERVICES, INC., *Appellant.*

*Gavin, Robinson, Kendrick, Redman & Mays, John Gavin,* and *Michael W. Leavitt,* for appellant.

*Critchlow, Williams, Ryals & Schuster* and *David E. Williams,* for respondent.

MUNSON, J.—The defendant, ITT-Federal Support Services, Inc., appeals from a judgment entered upon a verdict for the plaintiff, Raymond Goodell. We reverse and remand for new trial.

Mr. Goodell was employed by the Atlantic Richfield Hanford Company as a boilermaker-welder. During the course of his employment at the Hanford Atomic Energy Project, he allegedly suffered two electrical shocks while operating a welding machine.

The undisputed first shock occurred in 1968; it is also undisputed that defendant is not responsible for any injuries suffered as a result of that shock. The second shock allegedly occurred in January or February of 1970 and forms the basis for this third-party litigation. (RCW 51.24.010) Plaintiff contends this shock resulted from an improperly attached "shunt" which had been placed on the welding machine he was operating. Both the occurrence and the effect of the second shock are vigorously disputed. Plaintiff alleges that his injuries are a product of the second shock and occurred as a result of the defendant's negligence in failing to inspect, maintain, and render safe the welding machine which defendant was contractually required to do.

We reverse, principally for two reasons.

1

The court instructed the jury in the language of Rule 14 of RCW 19.29.010 as follows:

A statute provides:
All energized wires or appliances installed inside any building or vault for the distribution of electrical energy shall be sufficiently insulated, or so guarded, located or arranged as to protect any person from injury.
The violation, if you find any, of a statute is negligence as a matter of law. Such negligence has the same effect as any other act of negligence. Therefore, it will not render a defendant liable for damages unless you further find that it was a proximate cause of the claimed injury or damage.

■ We find that the intent of the legislature in enacting the provisions of RCW 19.29.010 is directed to electric power companies, public or private, and other persons or entities whose businesses are involved in the establishment and maintenance of apparatus necessary to the distribution

of electrical current, *Vannoy v. Pacific Power & Light Co.*, 59 Wn.2d 623, 369 P.2d 848 (1962); *Wray v. Benton County PUD*, 9 Wn. App. 456, 513 P.2d 99 (1973); *Frisch v. PUD 1*, 8 Wn. App. 555, 507 P.2d 1201 (1973), or equipment installed within a structure for the receipt and further distribution of electricity. *Deffland v. Spokane Portland Cement Co.*, 26 Wn.2d 891, 176 P.2d 311 (1947).

The caption to the 1965 amendment of RCW 19.29.010 reads: "ELECTRICAL CONSTRUCTION—SPECIFICATION—RULES" and the title reads "An Act relating to electrical construction; amending section 1, chapter 130, Laws of 1913 and RCW 19.29.010." Laws of 1965, 1st Ex. Sess., ch. 65, § 1, p. 1842. Section 1 provides that it shall be unlawful "to run, place, erect, maintain, or use any electrical apparatus or construction, except as provided in the rules of this chapter."

■ A welding machine is not an electrical appliance intended for the distribution of electrical energy, but rather an appliance which utilizes electrical energy. To adopt the interpretation urged by the plaintiff would cause the statute to be made applicable to normal household appliances, including, but not limited to, toasters, refrigerators, and power tools. Reading the statute in its entirety, we do not believe the legislature intended such a broad application. Giving this instruction constituted reversible error.

2

The court granted plaintiff's motion in limine to prevent defendant from offering evidence that he had filed claims for state industrial insurance and private insurance as the result of the 1968 shock, believing such evidence would be prejudicial and violate the collateral source rule.[1]

---

[1]"Under the collateral source rule or doctrine, . . . a wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." 25 C.J.S. *Damages* § 99(1) (1966). The doctrine is applicable in Washington. *Stone v. Seattle*, 64 Wn.2d 166, 391 P.2d 179 (1964); *Fleming v. Mulligan*, 3 Wn. App. 951, 954, 478 P.2d 754 (1970).

Defendant's offer of proof indicated the import of this evidence was that plaintiff had made no disclosures or claims for the second shock until after he had included it in a notice of trial amendment filed in March 1972, 2 years after its alleged occurrence and 9 months after bringing this action. Defendant's purpose was not to show that the plaintiff had been compensated, but to cast doubt upon his contention that a second shock had occurred. The inquiry was relevant, had probative value, and should have been allowed.

If the plaintiff acknowledged that no disclosures or claims had been made until 2 years later, defendant could inquire no further. If the plaintiff answered that he had filed an earlier claim for the second shock, further inquiry would be proper. The court erred in granting the motion in limine. *Rich v. Campbell*, 164 Wash. 393, 394, 2 P.2d 886 (1931).

Defendant assigns error to the court's failure to admit as an exhibit numerous excerpts from plaintiff's industrial insurance file. This assignment is not well taken in the context of the present record when the court did not allow the initial inquiry nor the laying of a foundation for impeachment. Whether this proposed exhibit would be admissible on retrial depends upon plaintiff's response to the inquiry. The availability of this documentation may justify the inquiry and the foundation for impeachment, but the records themselves may not be admissible unless they contain statements of the defendant. The record reflects that defendant was prepared to call as a witness the keeper of the industrial insurance records and ask if any claim had been made, contemplating his response would be in the negative. This was not an attempt to show compensatory payments, but was directed solely to the issue of the occurrence of the second shock. The inquiry was proper; whether the documentation should be admitted as an exhibit will depend upon plaintiff's response.

Additionally, defendant contends that the giving of instruction No. 26, which advised the jury it was to give no

consideration whatsoever to workmen's compensation nor should it consider any references to such compensation in it's deliberation, was error. This instruction would have been proper had the court allowed the inquiry regarding the insurance claims; it may be proper on retrial, depending upon the nature of plaintiff's response to such inquiries.

Inasmuch as this case is being reversed and remanded for the benefit of the parties, we comment briefly on some of the other issues to which error is assigned because they may arise on retrial.

Defendant contends that the issue of its contractual duty is not contained in the pleadings nor properly before the court. Defendant admits it had a contractual duty to inspect and maintain this particular welding machine, which duty it had performed, but insists it was not responsible for the defective shunt attached to the welding machine. This issue is within the pleadings.

Defendant entered into a contract with the United States government to manage, operate, and maintain the facilities designated using reasonable precautions to protect the health and safety of employees. Admittedly, this welding machine was one of those facilities.[2]

ARHCO was a successor to the interest of the United States. Whether plaintiff, as an employee of ARHCO, was a third-party beneficiary of this contract, to whom defendant owed a duty to properly inspect and maintain this welding machine, cf. *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961), whether the attached "shunt" comes within that contractual obligation,

---

[2]The contract reads in part:

"Article II—

"The Government expressly engages the Contractor to manage, operate and maintain the facilities designated in writing . . .

"Article III—

"(a)(1)(iv) Furnish plant protection, industrial safety, . . .

" . . .

"Article XVIII—

"The Contractors shall take all reasonable precautions in the performance of the work under this contract to protect the health and safety of employees and of members of the public and to minimize dangers from all hazards to life and property, . . ."

and whether that obligation was breached were questions of fact for the jury. *Kasparian v. Old Nat'l Bank,* 6 Wn. App. 514, 494 P.2d 505 (1972).

■ The contention that instructions Nos. 17 and 18, relating to liability of a contractor to a third-party for negligent performance of that contractual duty, are duplicitous and cumulative is well taken. The court should reconsider the necessity of giving both instructions.

■ The failure to give defendant's proposed instruction No. 21 that the *only* duty of the defendant extended to the welding machine itself, and not to the repair and maintenance of any parts or appurtenances, was not error; it was argumentative and slanted. Likewise, defendant's proposed instruction No. 15, in its attempt to limit recovery to the second shock and eliminate possible consequences as contrasted to probable consequences, does not take into consideration the fact that if the jury were to find there was a second shock for which defendant was responsible, that shock may have served to aggravate plaintiff's preexisting condition, if such existed. It was not error to refuse to give either instruction.

■ Defendant's contention that there was no physical impact is not well taken. An electrical shock has a physical impact. *See Clark v. Choctawhatchee Elec. Co-op.,* 107 So. 2d 609 (Fla. 1958); *Hess v. Philadelphia Transp. Co.,* 358 Pa. 144, 56 A.2d 89 (1948). If the jury found defendant was negligent in performing its contractual duties resulting in plaintiff sustaining injuries as a result of an electrical shock in 1970, he is entitled to seek damages for mental anguish if that element is supported by the evidence. *Venske v. Johnson-Lieber Co.,* 47 Wn.2d 511, 514, 288 P.2d 249 (1955).

The issue to which defendant directed its motion for mistrial is not likely to reoccur on remand; for that reason, we have not discussed that issue.

Judgment is reversed and the case is remanded for new trial.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied July 21, 1976.

Review granted by Supreme Court February 2, 1977.