**STATE of Maine**

v.

**Carlson PORTER.**

Supreme Judicial Court of Maine.

Aug. 8, 1979.

David W. Crook (orally), Dist. Atty., Robert J. Daviau, Asst. Dist. Atty., Augusta, for plaintiff.

Burton G. Shiro, Ronald L. Bishop (orally), Waterville, for defendant.

Before McKUSICK, C. J., POMEROY, WERNICK, ARCHIBALD, JJ., and DUFRESNE, A. R. J.

ARCHIBALD, Justice.

Carlson Porter was indicted by the Kennebec County Grand Jury for arson, the indictment charging:

THE GRAND JURY CHARGES: On or about the eighteenth day of July, 1977, at East Benton, in the County of Kennebec and State of Maine, Carlson Porter did start, cause or maintain a fire on his own property, to wit, a one story frame dwelling, located on the Hanscom Road, in said East Benton, with intent to enable him to collect insurance proceeds from the American Employers Insurance Company under a policy no. AM–V29–1333, issued August 25, 1975, for the loss caused by said fire.

Maine Criminal Code, 17–A M.R.S.A. § 802(1)(B)(1), proscribes the following conduct:

1. A person is guilty of arson if he starts, causes, or maintains a fire or explosion;

. . . . .

B. On his own property . . .
(1) with the intent to enable any person to collect insurance proceeds for the loss caused by the fire or explosion;

A traverse jury ultimately returned a guilty verdict, and an appropriate judgment of conviction was entered from which the defendant has appealed.

We deny the appeal.

It was stipulated "that the fire in question at the Porter home was of an incendiary nature in origin." The record leaves no doubt, however, that the appellant was not present and did not participate personally in the physical acts preliminary to the actual ignition of the fire which destroyed the dwelling. The State necessarily premised its theory of appellant's criminal liability on 17–A M.R.S.A. § 57(1)(2)(C)(3)(A), which provides:

1. A person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable as provided in this section.

2. A person is legally accountable for the conduct of another person when:

. . . . .

C. He is an accomplice of such other person in the commission of the crime, as provided in subsection 3.

3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct.

## FACTS

Initially, we must turn to a summary of the testimony to determine if there was sufficient evidence when applied to the State's theory of criminal responsibility to warrant the jury in finding beyond a reasonable doubt that the State had proved all elements of the crime, thus warranting the guilty verdict.

Cheryl Porter, appellant's wife, identified the appellant in court and testified that "[the defendant] and I owned a house . . . in Benton . . . [on the] Hanscom Road . . . [insured] with American Employers . . . [in the amount of] $30,000."

The couple were having marital difficulties, each having seen a lawyer concerning a divorce. At about 5:00 p. m. on the evening preceding the fire, Mrs. Porter left her house, driving her parents' "BMW," and having told her husband that she was leaving for a few days. The appellant owned a white Corvette which at that time was parked in the driveway. In the early hours of the following morning Mrs. Porter received a call, returned to her home, and found that it had been destroyed by fire. She also testified that the insurance company "paid off the bank and sent me a check for $5,000, my half of the contents." To the best of her knowledge, she and the appellant possessed the only keys to the house.

Geraldine Lee was the next door neighbor of the Porters. She was familiar with the white Corvette driven by the appellant and could identify the same by its "distinctive sounds." She heard the white Corvette leave the Porter home between "approximately 10:20 or 10:25" on the evening before the fire. She was awakened at two o'clock the next morning, heard noises at the Porter residence, and observed a car and "shadows moving around," as well as what looked like a light inside the house. Shortly there was an explosion, fire ensued, and she saw figures move "hurriedly," and the car then drove away. Mrs. Lee called the fire department.

There were two youthful witnesses who furnished testimony vital to proof of appellant's guilt.

On the critical evening Tammy Bragg, then 17 years old, was picked up by one Dana Shea, aged 26, and one Dean Varney, aged 17. After driving "around" a time they arrived at the house of Barbara Gilbert, where they met a Gene Bickford. After some conversation Tammy Bragg and Dana Shea left. Tammy testified that they then went to "Dana's house" where "somebody by the name of Carl,"[1] who was seated in "a little white car," instructed them to follow him. Doing so they arrived at a house and all three entered. "[T]he guy that was in the white car" then asked Dana "if it was all right to talk in front of me." Dana consented but all Tammy heard was "something about the wires in the house, that something should have been done to it" and the "other man . . . said he would leave on, the cellar lights, and if it was off, then that meant that his wife was home."

Tammy Bragg was unable to make an actual in-court identification of the appellant as being the person above referred to.

The couple then returned to Barbara Gilbert's (Gene Bickford's former wife) house where they were joined by Bickford and Dean Varney. After buying gasoline "in a separate container," the quartet went to a parking lot where, under directions from Dana Shea, "Gene and Dean" took possession of a truck and drove it to a remote area where gasoline was poured on it and the truck was burned.[2]

Tammy Bragg then described their return to "the same house" that she had previously visited. The cellar light was on. "We all went inside and Dana and Gene and Dean were talking about how to do it, how to light the house up. And they poured gas all over the carpets and stuff, and I went outside." The fire having been ignited by "Gene," who "got hurt doing it," the four left the scene with Dana Shea driving his car.

Miss Bragg had given this factual chronology to police agencies in the form of a written statement but before trial had recanted in a letter to the District Attorney. At trial she reverted to her original version of the events. The jury knew of her recantation as well as her motivations therefor and for testifying as she did. Thus, her credibility was subject to appraisal by the jury.

Dean Varney's testimony agreed essentially with that of Tammy Bragg. *Without objection*, he testified he knew it was "Carl's" house that was to be burned and that Dana Shea drove them to the scene. Varney was to receive $500.00 from Shea for his participation. Varney did not know the appellant and had no personal contact

---

1. There was no immediate objection to this testimony. However, the record discloses the next following question and answer:

   Q. How did you know that?
   A. Dana said his name was Carl.
   [Defense Counsel]: Well, I object, that is hearsay.
   The Court: Well, it is offered only for the fact that it was stated, not for the proof of the matter. I will overrule your objection.

2. There was testimony that this truck belonged to David Porter, appellant's brother. The truck had been left, locked, by its owner in the parking lot of Cascade Woolen Mills, where he worked. The "Chevie three-quarter ton" truck was insured at the time by "USF&G." There was no suggestion that David Porter was implicated in any way with this episode.

with him, acting solely on direction from Dana Shea.

In an effort to shift the onus of the arson from appellant to Gene Bickford, cross-examination sought to depict Bickford as the instigator because "Carl" owed him an unpaid debt, that he had a "grudge against Carl" and "he was looking for revenge against Carl." Varney denied each of these suggestions.

For his part in this "episode" Varney was serving a sentence in the Maine Correctional Center. While there (as was developed on cross-examination), he was visited by Dana Shea's wife. The record continues:

Q. All right. Was it as a result of talking with her that you made up the statement and sent it to Shea's attorney?

A. Right.

Q. She is the one that you say promised you a vet?

A. That's right. She said that Carl Porter would give me the vet [meaning "Corvette"].

On re-direct, Varney testified that Mrs. Shea had a signed piece of paper "written out by Carl Porter" underlying her offer of the Corvette if he would change his testimony.

Varney, in fact, did sign a document at variance from his original statement to the police (which was consistent with his direct testimony at trial) and adopting the suggestion advanced in cross-examination that Gene Bickford was the principal actor in formulating and committing the crime, motivated by a "grudge" against Carl Porter.

In evaluating Varney's testimony the jury was aware of the conflicting statements.

Neither Dana Shea nor Gene Bickford was a witness. Independently of Miss Bragg and Varney, the State did have testimony from a Debra Colcord who had seen the quartet together both before and after the fire. Additionally, and consistent with the testimony of both Varney and Miss Bragg, she had observed burns on Bickford's back and arms.[3]

The defense rested without presenting any independent evidence.

■ In summary, the jury was justified on this record in concluding that appellant was "legally accountable" for the acts of Shea, Bickford and Varney since it could believe, beyond a reasonable doubt, that he not only solicited them to commit the crime of arson but also aided them by planning the methodology of its commission. 17–A M.R.S.A. § 57(1)(2)(C)(3)(A).

I

■ Without having previously made any specific requests for jury instructions, at the close of the justice's charge defense counsel verbally asked for an instruction "as to the testimony of an accomplice that it must be viewed with great caution." The justice declined to do so "since I think it would call attention to something which is not at this point deserving of further instruction." Since the phraseology of the request would make the justice fully aware of defense counsel's reason for so requesting, the refusal to so instruct has been adequately saved for appellate scrutiny. *State v. Rice*, Me., 379 A.2d 140, 144 (1977).

Was it error to deny the request?

■ On the facts of this case we conclude that the refusal was not automatic error.

Obviously, the request was directed at the testimony of Dean Varney,[4] an admitted active participant in the burning of the Porter home. There never was any doubt *someone* was guilty of arson. The fire was stipulated to have been of an incendiary origin. There could have been no doubt it

---

**3.** Varney had testified that because Bickford "got too close to the gas when he lit it," he had burned his back.

**4.** Although Tammy Bragg was present when the criminal act was committed, she was a mere spectator. She did none of the acts which, in accordance with 17–A M.R.S.A. § 57(3)(A), would undergird her prosecution as an accomplice. *See State v. Caldwell*, Mo., 428 S.W.2d 727, 728 (1968).

was the appellant's home that burned. Dana Shea's involvement with the appellant found its roots in the testimony of Tammy Bragg, not in that of Varney. The episode at the Maine Correctional Center, in which appellant's name was involved, was developed on cross-examination. Furthermore, Varney's testimony found corroboration beyond that of Tammy Bragg. For example, his testimony that Gene Bickford's back was burned was confirmed by Debra Colcord. His testimony as to time was consistent with that of Geraldine Lee. David Porter confirmed that his truck had been destroyed by fire, a fact to which Varney had testified.

■ On the facts here, we turn to the language of Chief Judge Coffin as the basis of our conclusion that the refusal[5] to instruct as requested was not error, namely:

> Though it is prudent for the court to give a cautionary instruction, even when one is not requested, failure to do so is not automatic error especially where the testimony is not incredible or otherwise insubstantial on its face. *United States v. House*, 471 F.2d 886, 888 (1st Cir. 1973). The principal witness's testimony in this case was "generally consistent and credible," Id. Moreover, aspects of the testimony were corroborated . . . .

*United States v. Wright*, 573 F.2d 681, 685 (1st Cir. 1978).

**5.** In the instructions actually given to the jury it was admonished to consider various factors in resolving issues of credibility. The Justice said:

> Now it is your recollection of the evidence that controls. . . . And it is your sole function to determine weight and credibility of the evidence. You resolve the factual disputes which exist in any case by determining where does the truth lie, and you do that by assessing the evidence. If someone testifies that they observe something, you can consider: did they have the opportunity to observe; did they have a good memory; did they have the ability to relate accurately; did they appear to be candid on the stand; did they appear to be evasive on the stand; did they have any interest in the outcome of the litigation that might cause them to influence their testimony, and if so, did it cause them

## II

Within his instruction to the jury regarding prior inconsistent statements the trial justice stated:

> Now there is certain evidence that you are to consider for certain purposes only . . . .. If I tell you to consider evidence for a limited purpose, you consider it only for that purpose. I believe that if you look at the exhibits, and my recollection is that they consist entirely of prior statements of various witnesses; some notarized, and some not notarized, and there is also some testimony of prior statements made by witnesses which are not reduced to writing. *You will consider all of those prior statements for a limited purpose.* I have explained to you that prior statements which prove to be inconsistent with the testimony that you are now hearing, or were hearing, are to be considered by you *solely for the purpose of what impact they have upon the credibility of that witness.*

(emphasis supplied)

The justice's charge failed to manifest consideration of the impact of Rule 801(d)(1)(A), M.R.Evid., which provides:

> (d) Statements which are not hearsay. A statement is not hearsay if—
>
> (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony.

to influence their testimony; is their testimony consistent within itself, and consistent with other testimony in the case. The mere existence of an inconsistency means very little. Inconsistencies can be accounted for by innocent misrecollection, or was it just an insignificant detail. You may also consider in assessing inconsistencies as to whether there was any motive arising out of the evidence as you have heard it for that inconsistency and resolve the inconsistency, whichever way you determine. The weight to be afforded the evidence and the impact of an inconsistency is for you to determine. The convincing quality of the evidence is always the goal which the jury is seeking.

Having already given the above quoted instruction, the justice was undoubtedly motivated to characterize the requested instruction as not "deserving of further instruction."

Tammy Bragg had formerly testified in a proceeding[6] involving Dana Shea that neither Dana Shea nor Carl Porter had been involved in the burning of the Porter residence. Her prior testimony was admissible substantively (Rule 801(d)), and the justice erred[7] in restricting the jury's consideration of her statements at the earlier proceeding.

The justice's error, however, must be viewed in the context of the instant case as harmless. As the presiding justice charged the jury, the burden of demonstrating defendant's guilt beyond a reasonable doubt rested upon the State. The defendant did not even carry the burden of going forward with evidence upon any issue presented. The prior inconsistent statements of Miss Bragg at the earlier hearing were presented to the jury, but the ultimate question for the jury was not which of the sworn statements of Miss Bragg they believed truthful. The ultimate issue was whether the jury believed Miss Bragg's latest testimony, as corroborated by Dean Varney, for the jury might have refused to give credence to the earlier testimony of Miss Bragg and nevertheless have acquitted the defendant. Whether the jury was to consider the earlier testimony substantively, for the truth of the matter asserted therein, or merely as affecting the credibility of Miss Bragg, seems to be a difference without significance.

## III–A

While testifying on direct examination Dean Varney was asked how he would know that other persons were not present in the house that he and his companions were to burn. Varney answered that "there was a light to be left on." In response to the objection of defense counsel the presiding justice stated: "[T]he witness is testifying as to apparently what someone told him, and I believe that was Mr. Shea . . .. And so it is being accepted, not for the truth of the matter stated, but merely for the fact that it was stated." Defense counsel persisted in his objection.

Although we find the justice erred in his reasoning[8] with respect to admitting this testimony, we find that its admission was nevertheless proper because it was not hearsay.

Rule 801(d)(2)(E), M.R.Evid., provides:

(d) Statements which are not hearsay. A statement is not hearsay if:

. . . . .

(2) *Admission by party-opponent.* The statement is offered against a party and is . . . (E) a statement by a co-con-

---

6. Although from the record the exact nature of the proceeding is unclear, that Miss Bragg testified inconsistently at a hearing while under oath and subject to the penalty of perjury is unrefuted.

7. Since it is not dispositive of this case, we assume without deciding that the error was properly preserved for appellate review. Defense counsel objected to the portion of the justice's instruction quoted above but failed to isolate the inconsistent statements in Tammy Bragg's former testimony and did not point out to the presiding justice the applicability of Rule 801(d). As a basis for his objection to the charge, defense counsel stated: "I feel that [the inconsistent statements] are material, certainly substantive as stated in the statements, that affidavit of Dean Varney and by Tammy Bragg, that they should be considered as informative, substantive and probative." The presiding justice ruled correctly as to the objection articulat-ed by defense counsel, who seems to have been relying principally upon affidavits rather than prior testimony. Although defense counsel should state distinctly the ground for his objection, we, nevertheless, will assume that the presiding justice understood defense counsel's objection to also encompass Miss Bragg's inconsistent testimony.

8. We are unable to find any relevance, within the meaning of Rule 401, M.R.Evid., to the fact that Dana Shea stated that a light would be left on. Neither Shea nor Varney were on trial, and the existence of a conspiracy between them to burn the Porter residence was immaterial. For the statement to have any relevance the statement would have to be admitted for its truth that a light would, in fact, be left on, thereby implicating the defendant as the occupant of the dwelling in concerted action to commit arson.

spirator of a party during the course and in furtherance of the conspiracy.[9]

Essential to the admission of statement pursuant to this rule were findings by the trial justice that (1) the statement was made during the course of a concert of action to commit arson, (2) that the statement by Shea to the other participants was in furtherance of that combination, and (3) that the defendant participated with Shea in the concert of action. Since the trial justice relied upon other grounds in admitting the statement, he did not make any findings[10] upon these questions preliminary to the admission of a statement according to Rule 801(d)(2)(E). From the record, however, we find the determination of these preliminary issues not to be in doubt. The record reveals that the statement regarding the significance of the light was made during the course of the concert of action to burn the house. It cannot be gainsaid that the statement by Shea to the other participants was in furtherance of that combination. The only remaining essential preliminary issue is whether evidence independent of the statement established a prima facie case of the appellant's participation with Shea in a combination to burn the dwelling. *State v. Warren*, Me., 312 A.2d 535, 540 (1973), quoting *Parker v. State*, 276 So.2d 98, 99 (Fla. App. 1973). A review of the record and the verdict of the jury demonstrates that there was independent evidence.

### III–B

During the direct examination of Tammy Bragg the prosecutor asked whether anyone was in the small, white car that was parked at Dana Shea's house when Shea arrived for the 10:00 p. m. meeting with the man who subsequently showed them the house to be burned. Miss Bragg answered, "Somebody by the name of Carl." When the prosecutor sought to learn how she knew his name was Carl, Miss Bragg stated, "Dana said his name was Carl." The presiding justice overruled the objection[11] of defense counsel to the testimony.

The justice erred in overruling the objection. Miss Bragg's statements regarding the name of the man were clearly based upon hearsay and should, therefore, have been excluded. That Dana Shea may have said that the man's name was Carl had no relevance within the meaning of Rule 401, M.R.Evid., other than for the truth of the matter asserted. If not acceptable for its truth, the testimony should have been excluded as irrelevant. Rule 401. The justice's ruling was also not correct although for an inappropriate reason. The statement by Shea to Miss Bragg was clearly not in furtherance of any concert of action to burn the house. It was not admissible, therefore, as an admission of a co-conspirator during the course of and in furtherance of the crime.

Finding the ruling of the justice below to have been erroneous, we conclude nevertheless that the error was harmless. The

9. The absence of a count in the indictment for conspiracy does not cause this rule to be inapplicable. *United States v. Johnson*, 466 F.2d 508 (5th Cir. 1972).

10. Determinations of essential questions of admissibility relative to statements of co-conspirators are the exclusive function of the trial justice. *State v. Warren*, Me., 312 A.2d 535, 541 (1973).

11. We note that defense counsel failed to timely move to strike Miss Bragg's statement that "[s]omebody by the name of Carl" was in the white car. It is apparent from Miss Bragg's subsequent statement that the basis for her declaration regarding the name of the individual was not her own physical sense impressions but rather a statement by someone to her.

Miss Bragg, therefore, was incompetent to testify regarding the name of the man in the white car. *See generally* Rule 602, M.R.Evid.; Field and Murray, *Maine Evidence* § 602.1 (1976).

It is also apparent that if Miss Bragg's statement that the man in the car was "somebody by the name of Carl" was received into evidence without objection, the fact that Dana told that to Tammy would be (1) not hearsay but the foundation for Miss Bragg's knowledge and (2) merely repetitive and thereby harmless as hearsay.

We assume for the purposes of the instant case, however, that the objection of defense counsel referred to all of Miss Bragg's statements regarding the identity of the man in the car as based upon hearsay. *See* n. 1, *supra*.

statement by Miss Bragg was merely cumulative evidence of the identification of the appellant as an accomplice in the arson and was certainly far less probative than the other identification evidence presented: the defendant's neighbor, Geraldine Lee, identified him as the driver of a white Corvette automobile; Dean Varney testified that Dana Shea's wife had told him that he would receive Carl Porter's Corvette if he were willing to sign an affidavit exculpating Shea and Porter; Varney further testified that Mrs. Shea had with her a paper signed by Carl Porter which evidenced the offer of the Corvette; appellant was identified by his wife as the co-owner of the very dwelling that was destroyed by fire; all of the attendant circumstances, when viewed in totality and after eliminating Tammy Bragg's questioned statement, point inexorably to the appellant as the person legally accountable for the conduct of Shea, Varney and Bickford. In fact, the defense was premised on the theory that Gene Bickford, because of his "grudge" against the appellant, was the instigator of the plan to destroy the house. This theory acknowledged the identity of the appellant. Identification of the appellant having been established by other more probative evidence, the admission of Miss Bragg's hearsay-based testimony was therefore harmless. *Cf. State v. Holt*, Me., 391 A.2d 822, 826 (1978) (other irrelevant evidence previously admitted); *State v. Elwell*, Me., 380 A.2d 1016, 1021 (1977) (similar admissible evidence presented).

The error of the presiding justice in admitting Miss Bragg's testimony is also harmless when viewed cumulatively with the presiding justice's error in overruling the objection to his charge limiting the jury's consideration of Miss Bragg's testimony at a prior hearing. We are satisfied beyond a reasonable doubt that the admission of merely cumulative evidence did not prejudice appellant's right to a fair trial.

The entry is:

Appeal denied.

Judgment affirmed.

DELAHANTY, GODFREY and NICHOLS, JJ., did not sit.

DUFRESNE, A. R. J., sat by assignment.