STATE of Maine

v.

Kenneth COLOMY.

STATE of Maine

v.

Michael FISHER.

Supreme Judicial Court of Maine.

Nov. 13, 1979.

David W. Crook (orally), Dist. Atty., Caroline Greenleaf, Intern, Augusta, for plaintiff.

Bourget & O'Donnell by Norman C. Bourget (orally), Joseph M. O'Donnell, Augusta, for Colomy.

Burton G. Shiro, Lawrence T. Potter, Waterville (orally), for Fisher.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

ARCHIBALD, Justice.

Kenneth Colomy and Michael Fisher were separately indicted for aggravated assault, 17–A M.R.S.A. § 208(1)(A). Since both offenses could have been joined in a single indictment, the State filed a motion for joinder, and a justice of the Superior Court ordered that the cases be "joined for trial purposes." Rule 13, M.R.Crim.P. Following a jury trial of the conjoined indictments each defendant was found guilty, judgments of conviction were entered, and each defendant has appealed. We deny both appeals.

Defendant Fisher premised his appeal on six points. Defendant Colomy adopted two of those but added a third point. We will resolve the various points of appeal, discussing the facts only as necessary to our decision on each point.

## APPEAL OF MICHAEL FISHER

### 1–A. Issue of Joinder

■ There was no objection to the motion for consolidation, but Fisher now argues that it was obvious error to order the indictments joined for trial purposes.

The phraseology of each indictment was identical except for the defendants' names. There was a single victim of the assault, one Leroy Morton; the State represented it would place both defendants at the scene at the same time, and would offer testimony consistent with proving a joint participation in the assault by the defendants. At the hearing on the State's motion, there was no suggestion that the confession of either defendant would be offered in evidence, and there was assurance that no *Bruton* problem existed. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There was no intimation then that there would be antagonistic defenses presented. From this undisputed background we can detect no error in ordering the joint trial, let alone any error that could

lead to manifest injustice. The justice below did not exceed discretionary limits by his joinder order. *State v. Rich*, Me., 395 A.2d 1123, 1128 (1978).

### 1–B. Issue of Severance

■ During the course of the trial Fisher moved for severance based upon the argument that the defense of Colomy had become antagonistic to his position.

We conclude that the justice acted within the bounds of his discretion[1] when he denied the motion for severance. His action is supported by the facts.

The alleged antagonism arose when defendant Colomy, after the State had rested, elected to testify and announced his intent to call a witness for the purpose of depicting Fisher as the assaulter. The State then was allowed to reopen and, on direct, examine the witness Colomy had proposed to call. This witness was cross-examined by both defendants. Colomy did testify, the substance of his testimony being to deny contact with Morton, asserting that the physical acts constituting the assault were committed only by Fisher. Colomy was cross-examined by both the prosecutor and Fisher's counsel.

The evidence is undisputed that prior to the assault both Colomy and Fisher went to the locus of the assault with the avowed purpose of assaulting the victim. Colomy had learned that Morton was visiting Fisher's former girlfriend (who was also the mother of Fisher's illegitimate child) and had communicated this information to Fisher. Both men then repaired to the scene which was the apartment where Fisher's father lived. Colomy was directed by Fisher to position himself at the front door to prevent Morton's escape. Fisher then entered at the back door, observed Morton's presence, and opened the front door to admit Colomy. The assault ensued, followed by the victim's flight from the premises.

There was evidence from which the jury could conclude that both defendants had

---

1. If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court *may* order an election or separate trials of counts, grant a severance of defendants or provide *whatever relief justice requires.* Rule 14, M.R.Crim.P. (emphasis supplied).

personal motives for this assault. Morton was accused of having burglarized a cottage owned by Colomy's parents and, additionally, was suspected of having amorous relations with Fisher's former girlfriend.

The facts demonstrate that even if Colomy struck no blows, he was an accomplice of Fisher in a pre-planned assault, thus becoming equally responsible for the crime. We construed 17–A M.R.S.A. §§ 57(1), (2)(C), (3)(A)[2] in *State v. Porter*, Me., 404 A.2d 590, 594 (1979), and held that one who aids another in planning the methodology for illegal conduct is "legally accountable" for the ensuing crime even though the other person does the physical acts required for the commission of the crime.

The presiding justice acted within the guidelines set forth in *State v. Elwell*, Me., 380 A.2d 1016, 1020 (1977), by keeping "a watchful eye over the proceedings," being sure that a severance was not necessary to protect the defendant from undue prejudice. *See State v. Cuddy*, Me., 366 A.2d 858, 860 (1976); *Commonwealth v. French*, 357 Mass. 356, 376, 259 N.E.2d 195, 213 (1970); *see also Commonwealth v. Horton*, —— Mass. ——, 380 N.E.2d 687, 694 (1978). The jury was fully instructed on the liability of an accomplice under 17–A M.R.S.A. §§ 57(1), (2)(C), (3)(A). With this background in mind, it was irrelevant whether Fisher or Colomy actually caused the bodily injury to Morton. *Porter, supra*, at 594; *Horton*, 380 N.E.2d at 694.

As we have pointed out, no *Bruton* problem existed, and defendant Colomy was available for full cross-examination by Fisher. Under those circumstances there was no abuse of discretion in refusing to grant Fisher's motion for severance. *State v.*

*Wing*, Me., 294 A.2d 418, 424 (1972). Since it was not denied that Fisher and Colomy were accomplices in committing the assault, Colomy's defense (if such it was) cannot be seen as antagonistic to that of Fisher.

**2. Judicial Interrogation of Witnesses**

■ Fisher argues that because the presiding justice asked certain questions of Morton, Dr. Martyn Vickers, and Colomy, his right to impartiality on the part of the presiding justice was violated.

Subject to the obvious caveat to maintain judicial impartiality, and not to assume the posture of an advocate (*State v. Haycock*, Me., 296 A.2d 489 (1972)), a presiding justice "may interrogate witnesses." Rule 614, M.R.Evid. Our review of the record discloses no objections by Fisher to the very limited interrogation of these witnesses by the presiding justice. None of the questions suggested that the justice had any opinion on the facts being elicited. Rather, the questions were aimed at clarification. Thus, even if objections had been seasonably made, they would have no merit.

**3. Prosecutorial Comments in Opening and Closing**

■ In his opening statement to the jury the prosecutor began several sentences with the expression, "We know . . . ." Assuming that the repeated use of the expression "we know" in place of "the State will attempt to prove," might suggest that the prosecutor was expressing his personal opinion on the facts to be elicited, we deem this erroneous use of language to be harmless. *See State v. Pullen*, Me., 266 A.2d 222, 228 (1970). We have scrutinized the entirety of these remarks carefully to determine whether or not potential prejudice might

**2.** 1. A person may be guilty of a crime if it is committed by the conduct of another person for which he is legally accountable as provided in this section.
  2. A person is legally accountable for the conduct of another person when:

  .    .    .    .    .

  C. He is an accomplice of such other person in the commission of the crime, as provided in subsection 3.
  3. A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct;

17–A M.R.S.A. §§ 57(1), (2)(C), (3)(A).

have been thereby generated, and we can find none. *State v. Dana*, Me., 406 A.2d 83 (1979).

The justice below carefully instructed the jury that statements of the attorneys did not constitute evidence. He stated: "It is your recollection of the evidence that controls, not what the attorneys say it was, not what I say it is; but what the twelve of you recall." Reading the record in its entirety, it is obvious to us that the jury understood the comments of the prosecutor to be merely an opening summary of what the State anticipated it would prove. Furthermore, the State did in fact introduce evidence of the various facts commented on by the prosecutor and, in the main, there was no evidence to contradict these facts. While we do not recommend the use of such language, we find no prejudice to defendant Fisher resulted therefrom.

█ During the prosecutor's argument in summation and in rebuttal he is said, on appeal, to have misquoted the testimony. These arguments were not reported. As far as this claim of error is concerned, therefore, the matter is not capable of appellate review on this record. We will not decide such an issue on a silent record. *State v. Taylor*, Me., 343 A.2d 11, 21 (1975); *State v. Greaves*, Me., 281 A.2d 445 (1971).

### 4. State's Reopening

█ As we have previously stated, after the State and defendant Fisher had rested, Colomy indicated his intent to call a witness for the purpose of depicting Fisher as the one who assaulted Morton. To avoid any question that might arise because Fisher had technically rested and therefore might not be able to cross-examine this witness, the justice granted the State's motion to reopen its case and allowed it to call this particular witness. Rule 26(c), M.R. Crim.P., authorizes the presentation of further evidence after a party has rested its case "by leave of court." Refusing or granting such leave is reversible only for abuse of discretion. Glassman, Maine Practice, § 26.15. There was no such abuse here.

### 5. Judicial Expression of Opinion

█ Fisher next argues that he is entitled to a new trial because the presiding justice, during his charge to the jury, violated the admonition of 14 M.R.S.A. § 1105, which provides: "During a jury trial the presiding justice . . . shall not, during the trial, including the charge, express an opinion upon issues of fact arising in the case . . . ." This statute serves the salutary purpose of ensuring judicial impartiality and authorizes granting a new trial upon evidence of its violation. *See State v. Scholtz*, Me., 392 A.2d 1101 (1978), and cases therein cited.

We have reviewed the jury instructions in their entirety. We disagree with Fisher that Section 1105 was violated. The justice engaged in a balancing process when commenting on the facts during the course of his jury instructions, the purpose being to illustrate the distinction between important and unimportant facts and how the jury should weigh competing testimony to determine relative weight in a search for ultimate truth. Our reading of the charge discloses an even-handed use of this balancing technique and, on the facts of this case, a helpful device for the jury where minor and peripheral facts were in dispute, as were major facts critical to the ultimate question of guilt or innocence. There was no error.

### 6. Sufficiency of the Evidence

█ Our examination of the record reveals ample evidence to support Fisher's conviction.

There was undisputed testimony that the assault on Morton had resulted in a contusion of the right kidney demonstrated visually by both red blood cells in the urine and an intravenous pylogram. Hospitalization for several days was mandated followed by an order for "very limited physical activity for one month with no heavy lifting, and certainly no shovelling, mowing grass, any type of hard labor." This treatment was ordered because "there was a distinct possibility of loss of the kidney if it was not treated properly."

The indictment charged Fisher with "intentionally, knowingly and recklessly caus[ing] serious bodily injury to . . . Morton . . . ." 17–A M.R.S.A. § 208. "Serious bodily injury" is defined as a bodily injury which causes "substantial impairment of the function of any bodily . . organ, or extended convalescence necessary for recovery of physical health." 17–A M.R.S.A. § 2(23). The damage to Morton's kidney clearly falls within this definition.

There was testimony from Fisher's former girlfriend and from Colomy that Fisher struck several blows to Morton, both with his fist and by kicking him, which were consistent with the resultant damage to the kidney. On the other hand, if the jury disbelieved this testimony and attributed the physical damage to acts of Colomy, it is likewise clear that Colomy and Fisher were acting together in this assault. Thus, as we have previously suggested in our discussion of the accomplice statute, Fisher would be responsible for the assault even though Colomy actually struck the blows.

In summary, the jury verdict was rational. *See State v. Foley*, Me., 392 A.2d 1094 (1978).

### APPEAL OF KENNETH COLOMY

The first two points which Colomy asserts are essentially the same as those advanced by Fisher which we have dealt with under segments captioned 2 and 3 in Fisher's appeal. Our conclusions there reached are dispositive of Colomy's position on the same points.

### Issue of Judicial Partiality

During the cross-examination of Morton by Colomy's counsel, the record discloses these separate episodes:

Q  And you landed right at Kenneth Colomy's feet, didn't you?

A  I don't know if I landed right at his feet, but I know he was putting the feet to me.

Q  Well, you landed right on them, didn't you?

A  I didn't land right on him.

Q  Where did you land?

A  I landed on the floor.

Q  You don't know where you landed?
   [MR. PROSECUTOR]: Objection. He isn't letting the witness answer the questions, Your Honor.
   THE COURT: Let the witness answer the question, [Mr. Defense Counsel]. You ask him a question and before he gets a chance to answer it, you are at him with another question. Give him a chance to answer.
   [MR. DEFENSE COUNSEL]: Thank you, sir.

. . . . .

A  I just told you, I saw him kicking me.

Q  Did you see his foot?

A  Yes.

Q  Was there a pair of pants?

A  I saw his face.

Q  Well, he didn't kick you with his face.
   [MR. PROSECUTOR]: Objection. Objection, Your Honor.
   THE COURT: [Mr. Defense Counsel], can't you get on with the trial without badgering the witness.

. . . . .

Q  But you are not on friendly terms with Kenneth Colomy?

A  No.

Q  Have you talked this case over with Mike Fisher?

A  No, I haven't.

Q  You were downstairs this morning with him, weren't you?

A  No, I was not.

Q  And with Joyce Bechard?

A  I was downstairs.

Q  Weren't the three of you together?
   [MR. PROSECUTOR]: Objection.
   THE COURT: Give him a chance to answer, [Mr. Defense Counsel]. And I am not going to speak to you again about that. Now if you don't give him a chance to answer, I am going to have to do something else.
   [MR. DEFENSE COUNSEL]: I'm sorry, Your Honor, I thought I was.

THE COURT: You are asking him a question and before you give him a chance to answer you are firing another question at him. Now relax and let him answer the questions.

[MR. DEFENSE COUNSEL]: Sir, I stand corrected, but I really thought—

THE COURT: I don't want any arguments, either.

The jury instructions were clear, complete and impartial. The justice stated: "I have no opinion as to what your findings should be. The law does not permit me to take sides. You are not to draw any inferences by reason of any rulings that I may have made on any motions, and there have been many in this case." At a later point the justice continued:

Now there is just one other thing that I would like to call to your attention. The attorneys have worked hard and diligently in this particular case, and as I have indicated, it has been a difficult trial, and I am sure you are aware of that, and during the course of the trial, it is easy for someone to get wrapped up in their cause and become a little zealous, and under the law it is the duty of the Court to admonish an attorney who out of zeal for his cause does something which is not in keeping with the rules of evidence or procedure. You are to draw no inferences against the side to whom an admonition of the Court may have been addressed during the trial of the case. You are not to hold anything against an individual, the attorney's client, by reason of any admonition that may be made by the Court. It is the Court's obligation to make sure that the trial runs in an orderly fashion. It is not unusual for an individual to become zealous, as I have said, and to get carried away, and we might think a lot less of them if they didn't take their client's cause in good stead, and do everything they possibly could, but I do admonish you that you are not to hold it against any individual defendant by reason of any comment that may have been made by the Court.

We have included the above excerpts from the record not only to focus with precision on Colomy's assertion of judicial misconduct but also to depict, as well as one can from a cold record, the trial atmosphere prevailing at the time. In that context we must construe the rulings above quoted, which the appellant urges demonstrate judicial partiality.

The justice presiding at a criminal trial occupies a place of great responsibility. He must maintain an even balance between a defendant's right to a constitutionally fair trial and the state's right to protection from crime. We have said:

A justice who presides over a jury trial . . . must . . . see that dignified order is maintained . . . and that the procedure is according to rule . . . . [I]t is his duty to participate directly in the trial to facilitate its orderly progress . . . [and] [h]e must admonish counsel if occasion demands . . . but he must do so in a manner not to create a prejudice . . . .

*State v. Dipietrantonio*, 152 Me. 41, 48–49, 122 A.2d 414, 419 (1956). Our review of the record demonstrates a faithful adherence to the foregoing mandate.

We find no merit in Colomy's final point of appeal.

The entries are:

Appeals denied.

Judgments affirmed.

GLASSMAN, J., did not sit.