STATE of Maine

v.

Ronald JOHNSON.

Supreme Judicial Court of Maine.

Argued May 14, 1981.

Decided Sept. 15, 1981.

Charles K. Leadbetter, Pat Perrino, William R. Stokes, Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Burton G. Shiro, Waterville (orally), for defendant.

Before McKUSICK, C. J., and WERNICK *, NICHOLS, ROBERTS, and CARTER, JJ.

CARTER, Justice.

The defendant, Ronald Johnson, appeals from his conviction for murder, 17–A M.R. S.A. § 201(1)(A), following a jury trial in Superior Court, Lincoln County.[1] On this appeal, the defendant argues that the evidence was insufficient to support the jury's verdict finding him guilty of the murder of his mother, Verna Johnson, and also argues that numerous errors occurred in the course of the trial. We affirm the conviction.

From the evidence at trial, the jury could have found the following facts in connec-

---

* Wernick, J., sat at oral argument and participated in the initial conference but retired before the opinion was adopted.

1. The defendant was indicted by the Kennebec County Grand Jury. In October 1979, his motion for change of venue due to pretrial publicity was granted, and the action was transferred from Kennebec to Lincoln County.

tion with the death of Verna Johnson on March 27, 1979: On March 19, 1979, a police officer was called to the Johnson residence in Waterville. Mrs. Johnson was very upset and said she wanted her son, the defendant, out of the house. On March 25, 1979, the defendant told an acquaintance with whom he was drinking that he hated his mother and wanted her killed. On March 26, 1979, the defendant told the dispatcher of the taxi company he worked for that he was having problems with his mother and "she ought to be put away."

About 6:45 on the evening of March 27, 1979, the defendant and a friend, Steve Gillcash, took a taxicab to Mrs. Johnson's home. During the ride, the cab driver heard the defendant repeatedly say to Gillcash: "Something's going to happen tonight." At about 7:00 and again at 7:45 that evening, a friend of Mrs. Johnson telephoned the Johnson residence and asked for Mrs. Johnson. On both occasions, the defendant answered the phone and said that his mother was taking a bath. Between 8:00 and 9:00 that evening, the defendant and Gillcash went to a bar and a grocery store where the defendant cashed checks bearing his mother's signature.

At about 1:30 on the morning of March 28, the defendant and Gillcash were stopped by the Saco police while travelling southbound on Route 1. They were riding in a car registered to Mrs. Johnson, and the police saw a television set in the back seat. The defendant was arrested for operating under the influence, was released on personal recognizance, and left the police station about 5:30 a.m.

At about 6:00 on the morning of March 28, the taxi driver who regularly drove the defendant to work discovered that no one was home and that Mrs. Johnson's car was missing. The Waterville police were called and they found Mrs. Johnson's body sprawled on a chair in her living room. The medical examiner found three independent causes of death: a chest wound that could

have been inflicted with a knife, a scalp wound consistent with being struck by a ceramic object, and strangulation.

Two knives were found in the kitchen, one stained with the victim's blood. Broken pieces of a ceramic ashtray were found near the body, and similar fragments were found in Mrs. Johnson's hair. Stephen Gillcash's fingerprints were found on one fragment. The defendant's fingerprint was found on another fragment, located in an area where it could have been left only after the ashtray was broken. Gillcash's fingerprints were also found on a cigarette pack near the garage door.

On April 5, 1979, the defendant and Gillcash were arrested near Scarborough while travelling northbound on Route 1. They were still in Mrs. Johnson's car, but they had replaced the Maine license plate with a stolen New Brunswick plate. The defendant had in his possession his mother's checkbook and credit cards and receipts for gasoline purchases made on her credit cards.

The defendant and Gillcash both made statements to the state police on April 5. The defendant told police that when he and Gillcash arrived at his mother's house on March 27, they found her already dead, became scared, took his mother's checks and credit cards and television set, and left in his mother's car. Gillcash initially told the police the same story about finding Mrs. Johnson dead. Later, on the same day, he told a police officer that he and the defendant had planned to murder Mrs. Johnson and described the details of their joint participation in the killing.

On April 3, 1979, the defendant and Steve Gillcash were jointly indicted for the murder of Verna Johnson.[2] On August 14, 1979, Gillcash entered a plea of guilty and was convicted of murder. At the hearing on his guilty plea, Gillcash again stated that he and Ronald Johnson had jointly planned and participated in the killing.

2. On July 3, 1979, the defendant's motion was granted for severance of his trial from the trial of Steve Gillcash.

At Johnson's trial on July 14–18, 1980, Gillcash was called as a witness by the defense. On cross-examination, he testified that he and Johnson were both very drunk on March 27, 1979, that they were together all day, that they went together to the home of Verna Johnson, and that they later left the state together. He claimed to have no other memory of the events of March 27, but he acknowledged that his statements to the police on April 5 and at the hearing on his guilty plea were true "as far as I can remember."

### Sufficiency of the Evidence

■ The defendant preserved this issue by a motion for judgment of acquittal at the close of all the evidence. *State v. Wentworth*, Me., 366 A.2d 178, 178 (1976). He contends that there was not sufficient evidence from which the jury could find beyond a reasonable doubt that he "intentionally or knowingly" caused his mother's death. In particular, he contends that there is no evidence from which the jury could have found that he performed any of the actions that caused the death.

The jury was not required to find that the defendant's own actions caused Mrs. Johnson's death. The jury was properly instructed that it could find the defendant guilty either as the perpetrator of a murder or as an accomplice to the commission of murder, as defined in 17–A M.R.S.A. § 57(3)(A).[3] There is ample evidence from which the jury could find that the defendant and Gillcash were present at Mrs. Johnson's home while she was being killed, and that they both participated in knowingly or intentionally causing her death. Even if the jury found that the actual attack was perpetrated solely by Gillcash, they could conclude that the defendant was present for the purpose of assisting his friend and was therefore guilty as an accomplice to murder. *See State v. Gervais*, Me., 394 A.2d

1183, 1185–86 (1978). The jury could have rationally concluded beyond a reasonable doubt that Johnson was guilty of murder. *State v. Allison*, Me., 427 A.2d 471 (1981).

### Evidentiary Rulings

#### A.

■ At trial, the defendant objected to a police officer's testimony that red spots near the victim's body "appeared to be blood" and to the medical examiner's testimony that pottery fragments found in the victim's hair had the "same appearance" as fragments found on the floor. He contends that these statements were inadmissible because they represented lay opinions not based on personal knowledge. M.R.Evid. 701 permits a lay witness to testify in terms of opinion or inferences that are "rationally based on the perception of the witness" and "helpful to a clear understanding of his testimony." A witness's observation that stains *appear* to be blood is sufficiently within the scope of common familiarity to be admissible under this rule. *See State v. Wilbur*, Me., 278 A.2d 139, 143 (1971), *rev'd on other grounds*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Similarly, the medical examiner's comparison of the pottery fragments was rationally based on his own observations as a lay witness and *did not purport to be expert testimony*. His testimony was properly admitted as a "shorthand rendering of the facts." *State v. Lagasse*, Me., 410 A.2d 537, 543–44 (1980); *State v. Buzynski*, Me., 330 A.2d 422, 426–27 (1974).

#### B.

■ The defendant objected, on grounds of hearsay, to testimony from Robert Taylor, a fellow inmate of Steve Gillcash. On direct examination by defense counsel, Taylor testified, without objection from the state, that he had had a conversation with

---

**3.** Section 57(3) provides in part:

A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or

aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of his conduct....

Gillcash about the murder of Verna Johnson in which Gillcash "admitted doing it himself" and "said he killed the lady; that Johnson was innocent." On cross-examination, the state's attorney asked Taylor, over the defendant's objection, whether it was the "general consensus" and "general feeling" in the prison that Gillcash was "trying to cover for Johnson." After first responding that Gillcash and Johnson were "good friends" but that he did not know if Gillcash was trying to cover for Johnson, Taylor finally responded affirmatively. On redirect examination, Taylor repeated that he did not know.

We agree that it was error to admit Taylor's testimony as a matter of his view of the "general consensus." Taylor's testimony was hearsay in that it amounted to recitation of other inmates' assertions that Gillcash was trying to cover for Johnson. The testimony was being offered to prove the truth of the matter asserted in order to discredit the statement that Taylor had attributed to Gillcash. Even if Gillcash's out-of-court statement was also hearsay, M.R. Evid. 806 permits impeachment of hearsay declarants only with "evidence which would be admissible for those purposes if declarant had testified as a witness." [4]

■ Although Gillcash's credibility was a critical issue, the jury already knew that Gillcash and Johnson were friends, and they had heard Gillcash testify. Taylor's testimony that Gillcash and Johnson were "good friends" was properly admitted for purposes of discrediting the statement Gillcash made in prison. Although the other portion of Taylor's response to the prosecutor's question was erroneously admitted, we find that the error was harmless, because it did not affect substantial rights of the defendant, M.R.Crim.P. 52(a).

■ The jury's determination could not have been unfairly influenced by the suggestion that Gillcash was covering for his friend. If the hearsay statement had been properly excluded, the jury might have been more inclined to believe Gillcash's statement that he "did it himself," and to conclude that Johnson was therefore not guilty as a principal. That conclusion would have properly led to a verdict of not guilty only if the jury also found that Johnson was not guilty as an accomplice. Therefore, this error could be harmful in its impact only if the jury found Johnson guilty *solely* as a perpetrator and *not* as an accomplice to Gillcash. Such a finding would not have been rationally supported by the evidence. While the jury could rationally have found either that Gillcash was the sole perpetrator and Johnson acted solely as an accomplice, or that both men acted together as perpetrators, there was no evidence to support a finding that Johnson acted independently and alone. A finding of harmless error does not require us to "indulge assumptions of irrational jury behavior" when there exists another "perfectly rational explanation for the jury's verdict, completely consistent with the judge's instructions." *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 345 (1972). Under the circumstances of this case, the exclusion of the inadmissible hearsay could not have rationally brought about a verdict of not guilty, and the error was harmless. *See State v. Smith*, Me., 394 A.2d 259, 263 (1978).

### C.

■ The defendant also objected to the admission of two knives marked as state's exhibits 21 and 22. A state police trooper identified the two knives as the ones found at the scene of the crime of March 28, and another trooper testified that he received

4. Even if Taylor's testimony could be characterized as evidence of reputation of Gillcash's "character among his associates," and thereby within the hearsay exception of M.R.Evid. 803(21), impeachment with reputation evidence is permissible only with evidence of the witness's "character for truthfulness or untruthfulness." M.R.Evid. 608(a). Evidence that Gillcash was reputed to be covering for Johnson on a particular matter is not evidence of his general reputation for truthfulness. *See* R. Field and P. Murray, *Maine Evidence* § 608.1 (1976).

the knives on April 2. The defendant argues that the exhibits were not properly authenticated and should have been excluded because the state's chain of custody did not completely account for the exhibits between March 28 and April 2.

■ We have frequently stated that an incomplete chain of custody does not preclude admission of evidence that has been reasonably identified. A minor break in the chain of custody goes to the weight of the evidence rather than its admissibility. *See State v. Franco*, Me., 365 A.2d 807, 811 (1976); *State v. Thibodeau*, Me., 353 A.2d 595, 602–03 (1976). M.R.Evid. 901(a) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, there was sufficient evidence to support a finding by the jury that the State's exhibits were the same knives found at the scene of the crime and it was not error to admit them into evidence.

*Jury Instructions*

A.

■ The defendant argues that the trial court committed prejudicial error in failing to instruct the jury "that the testimony of an accomplice must be viewed with great caution." The record shows that defense counsel orally requested such an instruction, but that the court did not appear to understand what instruction he was requesting. Rather than clarifying his request, the defense counsel acknowledged that Gillcash's testimony was favorable to the defendant. Defense counsel did not include this instruction in his written request for instructions, and he never objected to the court's failure to give the instruction.

We have previously found that failure to give this cautionary instruction was not obvious error when not requested and not automatic error, even if requested. *State v. Porter*, Me., 404 A.2d 590, 594–95 (1979);

*State v. Jewell*, Me., 285 A.2d 847, 851–52 (1972). Here, the jury was given a general instruction on credibility and believability and had been given ample information about Gillcash to use in determining what weight to give his testimony. We find no error in the court's failure to give a further cautionary instruction about testimony that could be construed favorably to the defendant, especially in the absence of a more specific request.

B.

The defendant has raised several objections to the court's instructions on accomplice liability. The court gave three separate sets of instructions, based on the two sentences of 17–A M.R.S.A. § 57(3)(A). (See note 3 *supra*).

Under the first sentence of section 57(3)(A), accomplice liability for a crime requires that the person act with the actual "intent of promoting or facilitating the commission of a crime." The court gave two instructions based on this sentence. First, it instructed that the defendant could be an accomplice to murder if "Steve Gillcash actually committed the crime of murder . . . [and] the defendant, Ronald Johnson, solicited Steve Gillcash to commit the murder or aided or agreed to aid or attempted to aid Steve Gillcash in planning or committing the murder . . . [and] the defendant intended to promote or facilitate the murder." The court added that "merely being present at the scene of a crime . . . in and of itself is not sufficient to find him guilty as an accomplice," but that he could be liable as an accomplice by his very presence, "if he is there for the purpose of aiding, soliciting, promoting the commission of the crime, and he knows that the perpetrator of the crime is aware that his purpose in being there is for the purpose of aiding, soliciting, agreeing . . . ." Subsequently, it instructed that the defendant could, alternatively, be an accomplice to aggravated assault[5] if "Steven Gillcash

---

**5.** This instruction was based on the assumption that aggravated assault, 17–A M.R.S.A. § 208,

is a lesser included offense within the charge of murder, under 17–A M.R.S.A. § 201(1)(A). The

committed the offense of aggravated assault and . . . the defendant Ronald Johnson participated insofar as solicitation of Mr. Gillcash to commit the crime, and he aided or abetted or assisted in the commission of the crime," and again added that mere presence at the scene was not sufficient unless the circumstances permitted the conclusion that his presence was for the purpose of aiding and assisting the perpetrator.

■ At trial, the defendant raised two *objections to these instructions.* He argued that presence at the scene of the crime could not be sufficient for accomplice liability and that the evidence did not support the giving of the instructions. We find no error in the court's explanation of the circumstances that must accompany presence in order to support a finding of accomplice liability. *See State v. Gervais,* Me., 394 A.2d 1183, 1185–86 (1978). Since there was evidence that the defendant was with Gillcash at the scene of the crime and evidence of a prearranged plan to kill Verna Johnson, the evidence clearly supported the giving of the instruction. These instructions were a correct explanation of accomplice liability under the *first* sentence of section 57(3)(A).

We now turn to the alleged errors in the court's third set of instructions on accomplice liability. The court instructed the jury as follows:

If . . . you deem that . . . Steve Gillcash committed murder, and while it was merely the intent [of] Mr. Johnson to promote or facilitate the commission of an aggravated assault but that the foreseeable reason or foreseeable conduct or result could be death . . ., under those circumstances he would be guilty . . . [as an] accomplice, of murder. However if he did not have the reasonable foreseeable consequences of the act, even though it resulted in murder on behalf of the perpetrator and he was intending to promote or facilitate the commission of aggravated assault, he could only be held

guilty of the offense of assault. . . . If he did in fact aid or solicit or promote or facilitate, intend to, and aided or assisted or agreed in . . . the commission of aggravated assault and it was not a reasonable foreseeable consequence that death would occur, then he could not be held guilty for murder even though murder may have resulted . . . because it was not a reasonable foreseeable thing on his part and he was not intending to facilitate or promote that. If however you again deem that it was—or that he was—it was foreseeable even though he only intended to commit assault or promote or facilitate the commission of assault, then he could be held responsible for the offense of murder.

■ At trial, the defendant made only one objection to this instruction, arguing that it was "wrong to instruct them that it's possible for him to be guilty of murder when he only intended aggravated assault." We reject this argument because, under the second sentence of section 57(3)(A), the defendant may be an accomplice to a crime perpetrated by another person, even though the defendant did not subjectively intend to promote or facilitate that crime, if commission of that crime by the other person was "a reasonably foreseeable consequence of [the defendant's] conduct" described in the first sentence of section 57(3)(A). Therefore it was not error to instruct the jury that the defendant could be guilty as an accomplice to murder even if he did not have the culpable state of mind required for conviction of murder as a principal. *See State v. Kimball,* Me., 424 A.2d 684, 693 (1981); *State v. Goodall,* Me., 407 A.2d 268, 278 (1979).

■ There was no error on any of the grounds preserved by timely objection at trial, and the trial court properly overruled those objections. In addition, the defendant now raises new objections for the first time on appeal. Since these alleged errors were not brought to the trial court's atten-

accuracy of this assumption is not an issue in this case and is a question we do not here

decide. *See State v. Lagasse,* Me., 410 A.2d 537, 544 (1980).

tion, we examine the instructions only for obvious errors affecting substantial rights. M.R.Crim.P. 30(b); 52(b). First, the defendant argues that the instructions on accomplice liability were misleading and contradictory because the court omitted the "reasonably foreseeable" provision from the first two instructions and then added it in the third instruction. We have stated that the two sentences of section 57(3)(A) must be read independently to set forth two alternative forms of accomplice liability. *See State v. Anderson*, Me., 409 A.2d 1290, 1303 (1979); *State v. Goodall*, Me., 407 A.2d 268 (1979). The court did not err in giving separate sets of instructions to reflect these separate forms of liability.

■ Next, the defendant argues that the court erroneously defined "foreseeable consequences" subjectively rather than in terms of "what the average reasonable person would foresee in all the circumstances." *State v. Kimball*, Me., 424 A.2d 684, 693 n.4 (1981). Read in its entirety, the instruction does not require the jury to use a subjective standard or to determine what consequences the defendant actually foresaw. Although the court did not explicitly set forth a reasonable person test, it consistently used the terms "reasonably foreseeable," which would in ordinary usage be understood as an objective standard. The court's failure to amplify the definition of "reasonably" was not prejudicial error where the defendant did not request any further clarification. *Cf. State v. Seaburg*, 154 Me. 162, 145 A.2d 550 (1958) (no prejudice from court's failure to define "relationship").

■ Finally, the defendant argues that the court erred in saying that he could be an accomplice to murder if it was reasonably foreseeable that "death" would occur from his conduct in aiding and abetting Gillcash. We agree that this was erroneous. The court should have made clear that the reasonably foreseeable consequence had to be not merely the death of Verna Johnson, but her death under circumstances constituting the crime of murder. *See State v. Kimball*, Me., 424 A.2d 684, 692–93 (1981). There could be no prejudice to the defend-

ant, however, unless the jury could have found that although death was a reasonably foreseeable consequence, it was also reasonably foreseeable *only* that the death would occur under circumstances *not* constituting murder.

Read in their entirety, the instructions made clear that the jury was not to find Johnson guilty of murder under this form of accomplice liability unless it found that Johnson intended to promote or facilitate Gillcash's commission of aggravated assault, which the court had previously defined as recklessly, knowingly, or intentionally causing serious bodily injury, and unless it also found that Gillcash actually committed murder. Given these particular instructions and the evidence in this case, the jury could not rationally have found both that death was foreseeable and that murder was *not* foreseeable. If the jury found that Johnson's conduct was intended to aid and abet Gillcash in causing serious bodily injury, it must also have found it reasonably foreseeable that Gillcash would inflict that injury knowingly or intentionally. And if the jury found it reasonably foreseeable that death would occur from Gillcash's actions, it must have also found it reasonably foreseeable that such death would be caused knowingly or intentionally and would therefore constitute murder. Accomplice liability for murder does not depend on whether the murder which actually occurred took place under the particular circumstances that were reasonably foreseeable. *Id.* at 694.

We are persuaded that the jury's verdict would not have been affected even if the trial court had properly instructed the jury to determine whether the crime of murder was a reasonably foreseeable consequence of the defendant's conduct in intending to promote or facilitate the commission of the crime of aggravated assault. While we find that the court's instructions on accomplice liability were complex and less than entirely lucid, we conclude that any error did not result in manifest injustice to the defendant. *See State v. Thomas*, Me., 432 A.2d 757 (1981).

The defendant also argues that other errors occurred in the indictment, in the voir dire of prospective jurors, in evidentiary rulings, and in the instructions to the jury. We have carefully examined each of those contentions and find no error or abuses of discretion.

The entry is:

Judgment affirmed.

All concurring.